**In re Ceasar Gaite BERNALES, Debtor.**

**No. SV 05–50082 MT.**

United States Bankruptcy Court, C.D. California, San Fernando Valley Division.

June 19, 2006.

---

Ceasar Gaite Bernales, North Holly-
wood, CA, pro se.

Diane Weil, Los Angeles, CA, Chapter 7 Trustee.

Jennifer Braun, Office of U.S. Trustee, Woodland Hills, CA, U.S. Trustee.

## AMENDED MEMORANDUM OF DECISION AND ORDER

MAUREEN A. TIGHE, Bankruptcy Judge.

## TABLE OF CONTENTS

I. Introduction .................................................210

II. Preliminary Matters .........................................211

III. Factual Background .........................................211

IV. Discussion...................................................214
 A. Prohibition on Offering Legal Advice ......................214
 1. What Constitutes Legal Advice .........................215
 2. Whether New BAPCPA Provisions Allow Limited Practice of Law ........216
 3. CCSA and Mr. Bohl Improperly Gave Legal Advice ....................219
 a. Filing Fee Advice .................................219
 b. "Facesheet Filing" ...............................220
 c. Motion for Extension of Time.......................222
 d. Legal Interpretation of the Deadline .............222
 e. Advice Regarding the Debtor's Duties .............222
 f. Means Test Advice .................................223
 g. Inclusion of All Creditors .......................224
 h. Questionnaire ....................................224
 i. Selection of Exemptions ..........................225
 j. Website ..........................................225
 B. Other Violations of § 110 Involving Lack of Required Disclosures ............226
 1. 11 U.S.C. § 110(b)(2)(B) ..............................226
 2. 11 U.S.C. § 110(h)(2).................................226
 C. Sanctions ................................................227
 1. Fines or Damages to be Paid to the Debtor and U.S. Trustee............227
 2. Injunction ...........................................227

V. Conclusion ..................................................229

## I. Introduction

This case presents the issue of the lawful parameters of activities by bankruptcy petition preparers following enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("the new Act" or "BAPCPA"). Immediately before the effective date and following enactment of BAPCPA, the bankruptcy courts have seen increased numbers of unrepresented debtors file bankruptcy.[1]

This case involves Consumer Credit Services of America, Inc. ("CCSA"), a Florida-based bankruptcy petition preparer corporation which operates principally through its website: http://www.ccsofamerica.com/.[2]

---

1. The proportion of debtors unrepresented by counsel in this district rose to approximately 27% of all debtors last year. Shortly before the effective date of the new Act, over 50% of the debtors were unrepresented.

2. The name Consumer Credit Services of America, Inc. is not to be confused with Consumer Credit Counseling Service (CCCS), a certified credit counseling agency under 11 U.S.C. § 111. The choice of the CCSA name and its similarity to an established and well-

Advertising nationally through multiple media outlets, CCSA attempts to draw in the business of potential bankruptcy debtors across the country. CCSA and its employee and officer, Greg Bohl, have repeatedly engaged in the unauthorized practice of law and violated the Bankruptcy Code provisions regulating bankruptcy petition preparers. They have given legal advice, attempted to explain court procedures, suggested filing strategies, used unlawful questionnaires, and selected exemptions. To make matters more dangerous, CCSA and Mr. Bohl have done so without any real apprehension that what they are doing is the unauthorized practice of law. To the contrary, they appear to be quite proud of their "innovative" business model and strenuously argue that they are one of the "legitimate" bankruptcy petition preparers in the marketplace.

## II. Preliminary Matters

The findings contained herein are based on the two hearings held in this matter and all documents filed in the court record. CCSA has not appeared at any of the several order to show cause hearings, despite having been noticed of them. Under LBR 2090–1(g)(1), "[a] corporation, partnership or unincorporated association may not file a petition or otherwise appear without counsel in any case or proceeding" except in circumstances not relevant here. Under this rule, Mr. Bohl's telephonic appearance does not qualify as an appearance on behalf of CCSA as Mr. Bohl is admittedly no lawyer.[3] Thus, CCSA filed no objections and made no appearance.

Additionally, Mr. Bohl chose not to appear in person, despite ample warnings that he could not testify telephonically. By not appearing in person, Mr. Bohl was advised that he waived the right to testify, put forward evidence, or cross-examine any witnesses who testified at the hearings. He was, however, allowed to argue telephonically and invited to file any documentary evidence he wished, which he did.

## II. Factual Background

Sometime in mid-November 2005, Ceasar Gaite Bernales contacted CCSA to assist him in filing for bankruptcy. He found CCSA, which is operated out of Florida, online through its website. Bernales's assigned "case coordinator" was Greg S. Bohl, a non-attorney.[4] On November 22, 2005, CCSA e-mailed Bernales "emergency bankruptcy documents," in-

---

respected non-profit group raises additional questions which were not explored here.

3. Mr. Bohl acts like one, however. He often referred to his experience working for a local bankruptcy attorney and with bankruptcy trustees. He also frequently cited to and analyzed cases at the hearings, and apparently is at least a co-author of the website.

4. Although Mr. Bohl's is a self-described "case coordinator" and an employee and officer of CCSA, he is also legally a bankruptcy petition preparer himself under 11 U.S.C. § 110(a)(1) (" '[B]ankruptcy petition preparer' means a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document

for filing."). Here, there is no dispute that Mr. Bohl prepared Bernales's petition for filing for compensation. Therefore, he is a bankruptcy petition preparer. Note that the language of section 110(a)(1) contains no explicit exception for mere employees of bankruptcy petition preparers as it does for employees of attorneys. Congress clearly knew how to exempt employees of bankruptcy petition preparers. *Id.; see also* 11 U.S.C. § 101(12A)(A) (providing that employees of bankruptcy petition preparers are not subject to the "debt relief agency" provisions). Congress's failure to exempt employees of bankruptcy petition preparers in section 110(a)(1) suggests that Congress had no such intent. Further, any contrary reading would allow individuals to more easily circumvent the provisions of section 110.

cluding a Voluntary Petition, a Statement of Social Security Number, a Verification for Creditor Matrix, an Application to Pay Filing Fee in Installments, and an Order Approving Payment of Filing Fee in Installments.

On November 23, 2005, Bernales filed the Petition and the Verification for Creditor Matrix. Bernales's request to pay the filing fee in installments was denied. Bernales promptly amended his petition and paid his filing fee in full.

That very same day, the clerk's office issued a Notice of Case Deficiency under 11 U.S.C. § 521(a)(1) and Bankruptcy Rule 1007 and a Case Commencement Deficiency Notice. These notices advised the Debtor to file the remaining required documents within fifteen days or face possible dismissal.

After receiving these notices, Bernales and CCSA contacted each other back and forth by e-mail. CCSA advised the Debtor it would provide the missing documents "a day or 2 prior to the deadline." By December 8, 2005, the filing deadline, Bernales still had not received the remaining documents. Instead of receiving the documents or a response, he received an e-mail dated December 9, 2005, explaining that his case coordinator, Greg Bohl, was out on medical leave. This e-mail requested Bernales to fill out a Questionnaire and return it by fax to enable CCSA to prepare the remaining bankruptcy documents. Bernales faxed over a completed copy of the Questionnaire.

After Bernales faxed over the Questionnaire, he asked CCSA by email whether he "need[ed] to contact the court to get an extension on the 15 day deadline." CCSA replied with a question: "Is it possible that you can file a request for an extension of time to submit your bankruptcy schedules and other documents until Monday [December 12, 2005]? . . . That will automatically extend the time until it is ruled on and will give us more time to finalize your documents." After receiving this suggestion, the Debtor lodged with the Court an Order Pursuant to Extending Time to File the Required Documents, which would extend the filing deadline to December 16, 2005.

CCSA finally e-mailed some of the remaining documents to the Debtor on the afternoon of December 13, 2005. Bernales finally filed these documents on December 15, 2005. The Court signed Debtor's proposed order to extend the filing deadline on December 19, 2005, thus extending the deadline to December 16, 2005.

Notwithstanding the fact that Bernales filed additional documents on December 15, 2005, Bernales still failed to timely file a significant number of required documents, including (1) Debtor's Credit Counseling Certificate, (2) Debtor's Debt Repayment Plan (if any), (3) the current version of the Declaration Concerning Debtor's Schedules (Official Form B6), (4) all of Debtor's payment advices or other evidences of payment for the entire 60–day prepetition period, (5) a Statement of Related Cases (Official Form F 1015–2.1), (6) a Notice of Available Chapters (Official Form B201), (7) a Statement Regarding Assistance of Non–Attorney with Respect to the Filing of Bankruptcy Case (LBR 1002–1), (8) a Declaration and Signature of Non–Attorney Bankruptcy Petition Preparer (Official Form B1 9A), (9) a Notice to Debtor by Non–Attorney Bankruptcy Petition Preparer (Official Form B19B), and (10) a Disclosure of Compensation of Bankruptcy Petition Preparer.[5]

---

**5.** All of these forms had been available and easily accessible for free at the website for the U.S. Bankruptcy Court for the Central District of California (http://www.cacb.usc-

On January 31, 2006, another order to show cause was issued re: dismissal for Debtor's failure to file these required documents. Having failed to cure this defect by the time of the hearing on the order to show cause, and having failed to appear at that hearing, Debtor's case was dismissed on February 16, 2006.

This case first came to the court's attention when the Debtor filed a proposed order to extend the filing deadline. Based on the unusual nature of that document and after a subsequent review of Debtor's file, the court issued an order to show cause re: "Disgorgement of Fees by Bankruptcy Petition Preparer Consumer Credit Services of America, Inc. and Greg S. Bohl" on December 20, 2005. This order requested that CCSA and Mr. Bohl "explain how the petition was prepared and who gave the Debtor instructions to move for an order extending the time to file the required documents." The order also requested that they "explain who prepared this motion" (meaning the proposed order) and "why Debtor's schedules, Form 22A statement, statement of financial affairs, and employee income record were not timely filed."

A hearing was held on January 11, 2006. Bernales personally appeared and Mr. Bohl appeared telephonically. CCSA made no appearance. Although the order to show cause set a January 4, 2006 deadline for written responses, a written response in the form of a declaration was not filed by Mr. Bohl until January 10, 2006, the day prior to the hearing.[6] At the hearing it was determined what while CCSA and Mr. Bohl may not have been ghostwriting motions for the Debtor, there were strong reasons to suspect that CCSA and Mr. Bohl might have been engaging in the unauthorized practice of law in this case, in violation of 11 U.S.C. § 110(e), and might have violated other provisions of 11 U.S.C. § 110.

Determining that an evidentiary hearing would be required, the hearing was continued to February 15, 2006. Mr. Bohl was invited to file a supplementary response if he wished. The Debtor was instructed to file with the Court the e-mail exchanges between himself, CCSA and Mr. Bohl, which he subsequently did on January 20, 2006. Upon review of the e-mail exchange and upon this Court's determination that an injunction against CCSA and Mr. Bohl may be appropriate, the hearing on February 15, 2006 was continued to March 15, 2006 to give CCSA and Mr. Bohl time to respond to the court's additional concerns. CCSA and Mr. Bohl were notified in the order continuing the hearing to be prepared to show cause why an injunction against their operating in the Central District of California should not be issued. Neither CCSA nor Mr. Bohl filed any additional documents. The United States Trustee, however, filed a request for judicial notice, which included orders from several other bankruptcy courts enjoining CCSA, Mr. Bohl and their associates from, inter alia, engaging in the unauthorized practice of law and assisting debtors in Texas.

At the March 15, 2006 hearing, Mr. Bohl appeared by telephone. CCSA again did not appear, nor did the Debtor. The Assistant United States Trustee appeared.

---

ourts.gov/) in the "Chapter 7 Package" section.

6. At the hearing, Mr. Bohl attempted to justify his tardy response by arguing that CCSA rarely receives mail and so they do not check the mailbox very often. Given the time-sensitive nature of filing for bankruptcy, as this case amply demonstrates, CCSA is strongly encouraged to change its mail review and pickup procedures.

Mr. Bohl explained that he is a part-owner and officer of CCSA and that Claudia Fontalvo, another non-attorney, is also a part-owner and officer. CCSA is incorporated in Florida and is headquartered in Jacksonville, Florida. They have been in bankruptcy petition preparer business for over three years. Mr. Bohl argued that there were a lot of bad bankruptcy petition preparers, but that he is not one of them.[7] He asserted that he and CCSA did nothing wrong, and if anything was done wrong, it was unintentional.

Mr. Bohl explained that CCSA uses "bankruptcy filler software" to help debtors complete their bankruptcy petition documents. He argued that this software simply replicates the official forms and makes it easier for debtors to complete them.

The court, Mr. Bohl and the Assistant U.S. Trustee reviewed the remaining facts of Bernales's case. Of note, Mr. Bohl asserted that he and CCSA never encouraged Bernales to file a motion for extension and were not aware any such motion had ever been filed. The court and Mr. Bohl discussed the new debt relief agency requirements and how these relate to bankruptcy petition preparers and their duties. Finally, the court, Mr. Bohl and the Assistant U.S. Trustee discussed in detail the CCSA website.

## III. Discussion

11 U.S.C. § 110 sets forth limits on the conduct of bankruptcy petition preparers in their assistance of debtors in filing cases under Title 11. As noted above, both CCSA and Mr. Bohl are bankruptcy petition preparers under 11 U.S.C. § 110(a)(1). Therefore, the limitations set forth in this section apply to their conduct in this case.

### A. Prohibition on Offering Legal Advice

■ 11 U.S.C. § 110(e) expressly prohibits bankruptcy petition preparers from offering legal advice. "A bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice...." 11 U.S.C. § 110(e)(2)(A). Legal advice, for the purpose of this section, "includes advising the debtor (i) whether (I) to file a petition under this title; or (II) commencing a case under chapter 7, 11, 12, or 13 is appropriate; (ii) whether the debtor's debts will be discharged in a case under this title; (iii) whether the debtor will be able to retain the debtor's home, car, or other property after commencing a case under this title; (iv) concerning (I) the tax consequences of a case brought under this title; or (II) the dischargeability of tax claims; (v) whether the debtor may or should repay debts to a creditor or enter into a reaffirmation agreement with a creditor to reaffirm a debt; (vi) concerning how to characterize the nature of the debtor's interests in property or the debtor's debts; or (vii) concerning bankruptcy procedures and rights." 11 U.S.C. § 110(e)(2)(B). While these areas were all prohibited as a matter of case law previously, the BAPCPA amendments have now explicitly detailed them as well in this sec-

---

7. Mr. Bohl contended on the record that he and CCSA are in the process of shifting out of the bankruptcy petition preparer business into the business of selling software to help debtors and attorneys complete bankruptcy-related forms. However, the Assistant U.S. Trustee disclosed to the court that similar representations had been made to the Texas bankruptcy courts during hearings on similar orders to show cause. To date, now two months after the March 15, 2006 hearing, neither Mr. Bohl nor CCSA appear to have made any further attempts to leave the bankruptcy petition preparer business. This appears to be one of several misrepresentations Mr. Bohl made to the court, and evinces a fervent desire to keep the business going by any means necessary.

tion, putting bankruptcy petition preparers on greater notice of what constitutes the unauthorized practice of law. The above list is neither exclusive nor exhaustive. Rather, it is a set of examples explaining what constitutes legal advice.

### 1. *What Constitutes Legal Advice*

■■■ By prohibiting the offering of "legal advice," 11 U.S.C. § 110(e)(2) must be understood as a general prohibition against the practice of law by bankruptcy petition preparers, except where otherwise permitted by applicable law. "[S]tate law is properly considered in determining whether the unauthorized practice of law has occurred in a bankruptcy court." *In re Boettcher*, 262 B.R. 94, 96 (Bankr. N.D.Cal.2001); *see also Taub v. Weber*, 366 F.3d 966, 968 (9th Cir.2004). California law is quite explicit: "No person shall practice law in California unless the person is an active member of the State Bar." Cal. Bus. & Prof.Code § 6125.[8] According to case law interpreting this statute, practicing law means "the doing and performing services in a court of justice in any matter depending therein throughout its various stages and in conformity with the adopted rules of procedure." *Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court*, 17 Cal.4th 119, 128, 70 Cal.Rptr.2d 304, 949 P.2d 1 (Cal.1998). This specifically includes offering "legal advice . . . whether or not . . . rendered in the course of litigation." *Id.*

Section 110(k), a more seasoned section of the Code, explains that "[n]othing in [section 110] shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law." 11 U.S.C. § 110(k). Cases have interpreted this section to prohibit the unauthorized practice of law by bankruptcy petition preparers in a variety of different factual situations. *In re Pillot*, 286 B.R. 157 (Bankr.C.D.Cal.2002) involved an internet website that offered a bankruptcy program to assist debtors to file for bankruptcy. Among other things, the program made the debtor's exemption choice and provided her with legal advice about the bankruptcy process. The court found that this was the unauthorized practice of law and imposed sanctions. In *In re Glad*, 98 B.R. 976, 978 (9th Cir. BAP 1989), the court found that a nonattorney engaged in the unauthorized practice of law by "interview[ing] and solicit[ing] information from the debtor with regard to his financial status" and "assist[ing] the debtor in preparation of the bankruptcy schedules."[9]

■■■ As will also prove relevant to this case, in *In re Powell*, 266 B.R. 450, 452 (Bankr.N.D.Cal.2001), the court noted that "[a] non-lawyer engages in the unauthorized practice of law when he or she determines for a party the kind of legal document necessary in order to effect the party's purpose." *See also Boettcher*, 262 B.R. at 96 (holding that it was the unauthorized practice of law for a bankruptcy petition preparer to prepare a "fill in the blank" motions to dismiss for a continuance for the debtor).[10]

---

8. Violation of Cal. Bus. & Prof.Code § 6125 is a misdemeanor under Cal. Bus. & Prof.Code § 6126. In addition to criminal penalties under section 6126, there are potential civil penalties under section 6126.5. A person who engages in the unauthorized practice of law is also potentially subject to contempt under section 6127.

9. *Glad* also noted that "non-attorney will be subject to the requirements of § 329 if he engages in rendering 'legal services' to the debtor." 98 B.R. at 977.

10. *Boettcher* also noted that "[i]t is of course just as unlawful for a nonlawyer to provide bankruptcy schedules to debtors as any other forms; the only legitimate functions a non-

█ Interpreting legal terms also constitutes the unauthorized practice of law, a point which will prove relevant to the legality of the use of "questionnaires" utilizing simplified language to assist debtors in the filing of their petitions. In *Taub v. Weber*, 366 F.3d 966 (9th Cir.2004),[11] for example, the court held that a bankruptcy petition preparer engaged in the unauthorized practice of law when he interpreted the terms "market value" and "secured claim or exemption" for a debtor in connection with the completion of bankruptcy forms. *Id.* at 971; *see also In re Agyekum*, 225 B.R. 695, 702 (9th Cir. BAP 1998) (holding that bankruptcy petition preparer use of a bankruptcy handbook which provided information about the bankruptcy process, information on what to consider when filing bankruptcy and a glossary of bankruptcy terms constituted the unauthorized practice of law).

█ Similarly, "[s]oliciting information from a debtor [by use of a questionnaire] which is then typed into schedules constitutes the unauthorized practice of law." *Agyekum*, 225 B.R. at 702; *see also In re McCarthy*, 149 B.R. 162, 166 (Bankr. S.D.Cal.1992); *In re Anderson*, 79 B.R. 482, 485 (Bankr.S.D.Cal.1987) (paralegal

interviewed debtor, solicited information, prepared bankruptcy schedules, advised the debtor of her legal rights vis-a-vis secured collateral and the differences between a Chapter 13 and a Chapter 7 filing, advised the debtor on the necessity to file amendments to her schedules to reflect a tax refund, and selected her exemptions). More to the point, "[p]lugging in solicited information from questionnaires and personal interviews to a pre-packaged bankruptcy software program constitutes the unauthorized practice of law. Moreover, advising of available exemptions from which to choose, or actually choosing an exemption for the debtor with no explanation, requires the exercise of legal judgment beyond the capacity and knowledge of lay persons." *In re Kaitangian*, 218 B.R. 102, 110 (Bankr.S.D.Cal.1998). The law is clear: "[T]he services of bankruptcy petition preparers are strictly limited to typing bankruptcy forms." *Id.* at 113.[12]

## 2. Whether New BAPCPA Provisions Allow Limited Practice of Law

█ Mr. Bohl suggested that he was simply attempting to comply with certain revisions of the bankruptcy law under BAPCPA and seemed to think that recent

---

lawyer can perform is to type and file forms obtained and completed by debtors." 262 B.R. at 97 n. 2; *but see In re Herren*, 138 B.R. 989, 994 (Bankr.D.Wyo.1992) ("Providing copies of the Official Forms necessary to filing a petition for bankruptcy relief is a legitimate and necessary service to the public.").

**11.** Although *Taub* applied Oregon law, Oregon's definition of what constitutes the practice of law is substantially similar to California's: "[T]he practice of law includes the drafting or selection of documents and the giving of advice in regard thereto any time an informed or trained discretion must be exercised in the selection or drafting of a document to the needs of the persons being served ... [A]ny exercise of an intelligent choice, or an informed discretion in advising another of

his legal rights and duties, will bring the activity within the practice of the profession...." *Taub*, 366 F.3d at 969 (citation omitted).

**12.** The fact that CCSA and Mr. Bohl would also be "legal document assistants" under Cal. Bus. & Profs. Code § 6400(c) does not change the fact that they are still prohibited from engaging in the practice of law without a license. Legal document assistants are limited to completing legal documents in a ministerial manner, providing general published factual information, making published legal documents available and filing and serving legal documents. *Id.* § 6400(d). Furthermore, section 6402 explicitly does not sanction, authorize or encourage the practice of law by legal document assistants. *Id.* § 6402.

changes to the Code may have altered the general prohibition against the unauthorized practice of law by bankruptcy petition preparers. As discussed below, I hold that the BAPCPA has not changed the general prohibition against the unauthorized practice of law. If anything, the new Act has made it even more clear that bankruptcy petition preparers are not allowed to engage in the unauthorized practice of law.

The new Act explicitly does not preempt state law on the unauthorized practice of law. 11 U.S.C. §§ 110, 526, 527 and 528 all explicitly do not preempt state law on this subject.[13] Instead, these sections generally incorporate such law.

 On the other hand, had the new Act imposed any duties on bankruptcy petition preparers that constitute the practice of law, these duties would be lawfully permitted. Contrary state law would be preempted. However, "[t]he centerpiece of any preemption analysis is congressional purpose.... '[A]ny understanding of the scope of a pre-emption statute must rest primarily on a fair understanding of congressional purpose.'" *PG & E Co. v. California*, 350 F.3d 932, 943 (9th Cir.2003) (holding that presumption against preemption of generally applicable state law applies in bankruptcy area). "To displace traditional state regulation ..., the federal statutory purpose must be 'clear and mani-

fest.'" *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

The new Act certainly has imposed more requirements on bankruptcy petition preparers, but none of these clearly or manifestly require bankruptcy petition preparers to engage in the practice of law. With respect to 11 U.S.C. § 110, despite significant statutory changes, such as the new notice requirement under subsection (b)(2), "[n]othing in th[at] section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law." 11 U.S.C. § 110(k). The new notice requirement in subsection (b)(2) reiterates this point, in that it is required to state "in simple language that the bankruptcy petition preparer is not an attorney and may not practice law or give legal advice." 11 U.S.C. § 110(b)(2)(i). The notice may give examples of advice the bankruptcy petition preparer may *not* give, and must be signed by the Debtor. *Id.* § 110(b)(2)(ii) & (iii).[14]

Aside from 11 U.S.C. § 110, the only area of the Code that has changed the duties of bankruptcy petition preparers is the "debt relief agency" provisions. *See* 11 U.S.C. §§ 526–528. These provisions apply to bankruptcy petition preparers because, under 11 U.S.C. § 101(12A), they

---

**13.** 11 U.S.C. § 110(k) provides that "[n]othing in [section 110] shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law." Similarly, 11 U.S.C. § 526(d) states:

(d) No provision of [section 526], section 527, or section 528 shall—
(1) annul, alter, affect, or exempt any person subject to such sections from complying with any law of any State except to the extent that such law is inconsistent with those sections, and then only to the extent of the inconsistency; or

(2) be deemed to limit or curtail the authority or ability—
(A) of a State or subdivision or instrumentality thereof, to determine and enforce qualifications for the practice of law under the laws of that State; or
(B) of a Federal court to determine and enforce the qualifications for the practice of law before that court.

**14.** Providing debtors with forms that are required to be transmitted under 11 U.S.C. §§ 110 and 527 does not constitute the practice of law.

are expressly defined as debt relief agencies.

Having reviewed these statutory provisions, the only section that comes anywhere close to modifying the general prohibition against the unauthorized practice of law by bankruptcy petition preparers is 11 U.S.C. § 526(a)(3)(B).[15] Under this section, "[a] debt relief agency shall not ... misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to ... the benefits and risks that may result if such person becomes a debtor in a case under this title." 11 U.S.C. § 526(a)(3)(B).[16] It could be argued that this section may provide that, in certain extreme circumstances, a bankruptcy petition preparer may have a duty to explain the benefits and risks of filing bankruptcy, meaning, to this limited extent, bankruptcy petition preparers would be permitted to practice law. As discussed below, however, Congress has indicated through other sections in the new Act that this cannot be what section 526(a)(3)(B) means.

Applying the rules of preemption, there is neither a manifest nor clear intent to preempt state law prohibiting the unauthorized practice of law. If anything, the BAPCPA has made it much clearer that bankruptcy petition preparers without exception are prohibited from practicing law. 11 U.S.C. § 110(e)(2) provides, in part, that "[a] bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice." 11 U.S.C. § 110(b)(2) requires bankruptcy petition preparers to provide debtors with a notice stating "in simple language that a bankruptcy petition preparer is not an attorney and may not practice law or give legal advice." Bankruptcy petition preparers are prohibited from using "the word 'legal' or any similar term in any advertisements, or to advertise under any category that includes the word 'legal' or any similar term." 11 U.S.C. § 110(f). Finally, 11 U.S.C. § 527, one of the "debt relief agency" provisions similarly provides that bankruptcy petition preparers must provide debtors with an additional statement that says: "You are generally permitted to represent yourself in litigation in bankruptcy court, but only attorneys, not bankruptcy petition preparers, can give you legal advice." 11 U.S.C. § 527(b).

Given these other statutory provisions, it is clear that whatever 11 U.S.C. § 526(a)(3)(B) means, it is not a license to engage in the practice of law. Instead, it appears that Congress was focused on the word "misrepresent." However, for there to be a misrepresentation, there must first be a representation. *See In re Rubin*, 875 F.2d 755, 759 (9th Cir.1989) (describing the elements of fraudulent misrepresentation under 11 U.S.C. § 523(a)(2)(A)). Yet, under applicable law, there cannot be a representation. If the bankruptcy petition preparer remains the "mute typist" that law requires him or her to be, then there is no risk of misrepresentation. By contrast, it is only when bankruptcy petition preparers do give legal advice and make legal representations that the risk of direct

---

**15.** 11 U.S.C.A. § 527(c) also imposes certain legal duties on "debt relief agencies," such as to provide information on "how to provide all the information the assisted person is required to provide under this title pursuant to section 521." However, this duty extends only "to the extent permitted by nonbankruptcy law." *Id.* Thus, section 527(c) does not impose any such duties on bankruptcy petition preparers.

**16.** "Assisted persons" are "any person[s] whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $150,000." 11 U.S.C. § 101(3).

or indirect misrepresentation arises.[17] Thus, I conclude that no section of the BAPCPA permits bankruptcy petition preparers to engage in the practice of law.

### 3. CCSA and Mr. Bohl Improperly Gave Legal Advice

#### a. Filing Fee Advice

 CCSA engaged in the unauthorized practice of law in giving the Debtor filing fee advice in its November 22, 2005 e-mail to the Debtor. This e-mail included certain "emergency bankruptcy documents," including an Application to Pay Filing Fee in Installments (Official Form 3A). This e-mail reads, in pertinent part, as follows:

> Include a POSTAL MONEY ORDER (only U.S. Postal Money Orders are accepted) or CASHIER'S CHECK in the amount of $274 payable to "Clerk, U.S. Bankruptcy Court" for the court filing fee. Most bankruptcy courts will allow you to pay the filing fee in monthly installments, if necessary. Please contact your local bankruptcy court at the above telephone number for information about its local policy regarding payment of the filing fee. A fillable Application to Pay Filing Fee in Installments is attached. Complete the form after speaking to your local bankruptcy court clerk as to how the installment fee needs to be paid.

This is clearly legal advice and, at least in this district, it would be incomplete advice, misleading, and potentially harmful. Under LBR 1006–1, an individual may apply for permission to pay the filing fee in installments, but only if he or she is "unable to pay the full filing fee." In addition to a written application, a local rule requires that the application be accompanied by "a declaration under penalty of perjury stating whether the debtor received assistance in preparing the petition and whether the debtor paid anyone for such assistance." It is extremely rare for an installment fee application to be approved in this district where payment has previously been made to a bankruptcy petition preparer or an attorney. See FRBP 1006(b). In this case, no such declaration was provided to the Debtor or filed with the Court. The fact that CCSA couches its language in admonitions to call the clerk does not change the fact that the above paragraph constitutes legal advice.

In addition, the Voluntary Petition prepared by CCSA and Mr. Bohl indicated that the filing fee was to be paid in installments. To the extent that CCSA and Mr. Bohl made this selection for the Debtor without his specific instruction to do so, this is likewise, engaging in the unauthorized practice of law. This action goes far beyond mere typing and has legal implications. Here, Bernales believed he had an urgent, time-sensitive need to file bankruptcy. He received these e-mail instructions and completed forms from CCSA and Mr. Bohl and relied on them as sufficient to allow him to file his fee in installments. Had the Debtor only been prepared to pay an installment on the date he filed his petition, his petition might have been rejected and, because of this delay, the Debtor could have suffered irremediable consequences. Fortuitously, this in fact did not happen here. After he was rejected at the window, he promptly modified his petition

---

17. There is an excellent example of such a misrepresentation on CCSA's website in the FAQ section. *Question:* "Are there any negative consequences to filing bankruptcy?" *Answer:* "Despite the many rumors propagated for years by creditors, debt collectors, debt counseling organizations and the like for their own self-interest, there are virtually no negative consequences to filing bankruptcy...."

and paid his filing fee in full.[18]

### b. *"Facesheet Filing"*

█ In the same e-mail as the filing fee advice, CCSA further stated as follows:

> The attached documents are the only documents required to effectuate your bankruptcy filing. Your bankruptcy will be effective immediately upon filing. By law, additional bankruptcy documents including but not limited to a Summary of Schedules, Schedules A–J, a Statement of Financial Affairs, Statement of Intention, etc. (approximately 30–35 pages) must be filed within 15 days of your initial bankruptcy filing. Please let us know (preferably via e-mail) once you have filed the attached documents with your local bankruptcy court so we'll know when your additional documents will be due. The court clerk will provide you with a deficiency notice informing you as to the 15–day deadline for submitting additional documents.

Advising the Debtor which documents he needs to file to effectuate his bankruptcy is also the unauthorized practice of law. By providing Bernales with solely these limited documents, which did not include at least one required declaration, CCSA and Mr. Bohl set Bernales up for failure.

Providing the Debtor only with "emergency bankruptcy documents" brings up several important issues, the first of which is a "facesheet filing." Encouraging a debtor to file a "facesheet filing" is engaging in the practice of law. How to do such an abbreviated initial filing is not obvious from the Court's website. Instead, it involves "an intelligent choice, or an informed discretion in advising another of his legal rights and duties." *Taub,* 366 F.3d at 969.

"Facesheet filing," in particular, carries potentially serious consequences, particularly post-BACPA. Whereas pre-BACPA, the Debtor would likely only be put to the additional risk and expense of having to file a second bankruptcy if he did not file the remaining paperwork in time and his case were dismissed, the situation changes drastically post-BACPA. Under 11 U.S.C. § 362(c)(3), in general, if an individual debtor had a case that was dismissed within the previous year, the automatic stay automatically terminates after only thirty days. The debtor may move to extend the automatic stay, but must show good faith. However, statutorily, "a case is presumptively not filed in good faith . . . as to all creditors, if . . . a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1–year period, after the debtor failed to file . . . documents as required by this title or the court without substantial excuse. . . ." 11 U.S.C. § 362(c)(3)(C)(i)(II)(aa). Mere inadvertence or negligence, in general, are not a substantial excuse. *Id.* Moreover, the debtor must overcome this presumption by clear and convincing evidence.

█ Under normal circumstances, Debtor's case should have and would have been dismissed much earlier than it was. The only reason it was not dismissed earlier was because the clerk's office was backlogged with filings from the "hurricane" of filings that were filed the week preceding October 17, 2005, immediately before the major provisions of the BAPCPA went into effect. If Debtor should file a second

---

**18.** The court notes that actual knowledge that a debtor is able to pay the filing fee in full when completing these forms, combined with encouragement to apply to pay in installments and provision of the requisite forms, is potentially the subornation of perjury. In the Application to Pay Filing Fee in Installments, the Debtor is required to declare that "I am unable to pay the filing fee except in installments."

bankruptcy, his automatic stay will only last thirty days absent a court order extending it. Debtor would be hard pressed to extend the automatic stay by showing his good faith by clear and convincing evidence, since there would be a statutory presumption against him. Moreover, should this second case also be dismissed, Debtor will have no automatic stay at all. *See* 11 U.S.C. § 362(c)(4)(A)(i). Dismissal now has widespread implications under the Code. This factor highlights why the election to engage in a "facesheet filing" is a significant legal decision, and is not a decision that should be encouraged, let alone made, by bankruptcy petition preparers.

A second reason why a "facesheet filing" was especially inappropriate in this case was that by engaging in a "facesheet filing," the Debtor, CCSA and Mr. Bohl put off completing Form B22A, the means test calculation form, until some time later. By filing a "facesheet filing," the Debtor inappropriately and prematurely elected to pursue Chapter 7 relief instead of Chapter 13 relief. Because he filed under Chapter 7, however, without due consideration to his monthly income level and expenses, the presumption of abuse arose under 11 U.S.C. § 707(b)(2)(A)(i). While, under 11 U.S.C. § 362(c)(3), dismissal under section 707(b) would not shorten the automatic stay in a subsequent case like a dismissal for failure to file schedules would, dismissal under this section would cause the Debtor to incur numerous unnecessary expenses. In addition to any expenses incurred in filing and maintaining the Chapter 7 case, the Debtor would have to pay, at minimum, filing fees to convert his case to Chapter 13 or to file a new Chapter 13 case. Had all of the documents been prepared at the same time and had CCSA and Mr. Bohl not felt competent enough to make an intelligent decision to file a "facesheet filing," this unfortunate situation might never have arisen. However, because CCSA and Mr. Bohl decided to play lawyer, it did.

To make matters far worse, and to take the discussion beyond the purely legal question of whether CCSA and Mr. Bohl engaged in the unauthorized practice of law, CCSA and Mr. Bohl completely bungled this matter. The control and timing of turning over the documents to the Debtor for filing was completely in their hands. The Debtor daily begged and pleaded in his e-mails for CCSA and Mr. Bohl to send him his completed documents in time to meet the deadline, and they failed him time and again. Worse, they led the Debtor to believe, to his detriment, that the documents would be ready in no time and there would be no problem. CCSA's website prominently stated: "Consumer Credit Services of America can prepare your Chapter 7 or 13 Official Bankruptcy Forms in as little as one day...." Moreover, CCSA made specific representations to the Debtor by e-mail: "We know what is missing and will get them to you a day or 2 prior to the deadline." In particular, on the date of his deadline, the Debtor e-mailed Mr. Bohl again as to the status of the documents. He got an out-of-office reply: "Your case coordinator, Greg Bohl, has been out on medical leave. A Bankruptcy Questionnaire is attached. Please complete the Questionnaire and return it to us asap via fax.... We can complete your bankruptcy documents and e-mail them to you within an hour or so after we receive the completed Questionnaire from you." In Court, Mr. Bohl testified that the Questionnaire is a simplified version of the questions found in the Schedules and Statement of Financial Affairs, and that CCSA uses this Questionnaire to complete their debtors' paperwork. This suggests that despite all assurances they were working on Debtor's paperwork, CCSA and Mr. Bohl put off doing much, if any, of

this work until the eleventh hour. This conclusion is bolstered by the fact that the papers, which by their own statements only take an hour to complete, were not ready until December 13, 2005 and were not filed until December 15, 2005, although they were due on December 8. CCSA and Mr. Bohl left the Debtor in a lurch. Mr. Bohl, his primary contact person, was out of the office, but no notice was provided to Bernales of this until he received the e-mail, and apparently there was no backup person to assist in filing the remaining papers. Put simply, CCSA and Mr. Bohl show no signs that they cared, which is especially troubling considering how preju-diced the Debtor would soon be by a dis-missal. Had an attorney conducted him-self with the same ineptitude, he or she could have been sanctioned and the debtor would have had recourse to a malpractice policy for any harm or ineptitude caused.

c. *Motion for Extension of Time*

 For the sake of completeness, during these delays, CCSA and Mr. Bohl actually did do something to help the Debtor. They encouraged him to file a motion to extend the deadline to file the remaining paperwork. While it appears that neither CCSA nor Mr. Bohl actually drafted the motion itself, their mere en-couragement of this is also the unautho-rized practice of law, and has legal conse-quences. Their wholehearted faith in its approval was inappropriate. The fact that it was filed seems to have fueled their lackadaisical attitude toward timeliness. The Court very well could have denied the motion to extend the deadline, but it did not. Notwithstanding the fact that this advice actually helped the Debtor, it was unlawful for CCSA and Mr. Bohl to give it. Rather, they should have simply provided the Debtor with all of the necessary docu-ments at once. They should have never meddled with "emergency bankruptcy doc-uments" in the first place. This way they could have properly limited their role to typing and would never have felt the need to engage in the unauthorized practice of law to dig the Debtor out of a hole that they themselves were a primary force in creating.

d. *Legal Interpretation of the Deadline*

Next, CCSA and Mr. Bohl engaged in the unauthorized practice of law in advis-ing the Debtor what constitutes "15 days" for the purpose of meeting his deadline. Anxious to meet his deadline, the Debtor asked CCSA and Mr. Bohl whether the 15 day deadline means "15 business days or 15 days total including weekends." Rath-er than simply advise the Debtor to refer to the case commencement deficiency no-tice, CCSA and Mr. Bohl gave the Debtor their interpretation of FRBP 9006. They wrote: "15 calendar days, including week-ends. Exclude the day your initial docu-ments were filed. If the last day falls on a weekend or holiday, the due date is ex-tended to the next court business day. Courts usually allow 1 or 2 extra days." For the most part, CCSA and Mr. Bohl happen to be correct. However, had they been wrong and had the Debtor relied on their interpretation, the Debtor could have been prejudiced, and without the same remedies he might have against an attor-ney.

e. *Advice Regarding the Debtor's Duties*

 CCSA also, in one of their e-mails, provided the Debtor with a list of what the Debtor is required to do under 11 U.S.C. § 521. In this short list, they advised the Debtor to (1) file evidence of income with the Court within 15 days, and (2) provide the Chapter 7 Trustee with a copy of the Debtor's most recent federal income tax return at least seven days before the meet-ing of creditors. This list is legal advice. Although the above are, indeed, duties un-

der 11 U.S.C. § 521, this list is incomplete. Notably, CCSA and Mr. Bohl never mentioned that the Debtor is required to file the section 342(b) certificate. This is a certificate Congress now requires demonstrating that the debtor was aware of which bankruptcy chapters were available and the services available from credit counseling agencies. *See* 11 U.S.C. §§ 342(b), 521(a)(1)(B)(iii). In fact, it appears that they never provided the Debtor with the required section 342(b) notice in the first place. In addition, CCSA and Mr. Bohl did not advise the Debtor to file a statement of the amount of monthly net income or a statement disclosing any reasonably anticipated increase in income or expenditures. *See* 11 U.S.C. § 521(a)(1)(B)(v) and (vi). Again, had the Debtor relied on this as a complete list, he would have done so at his detriment. Rather than take the advice of a Florida-based bankruptcy petition preparer, who is not entitled to give legal advice and is unfamiliar with this district, the Debtor should have been referred to the list of forms in the Chapter 7 Package on the Court's website.

### f. *Means Test Advice*

On December 5, 2005, the Debtor sent an e-mail to Mr. Bohl, stating: "[Y]ou were suppose to let me know if we needed to switch to a Chapter 13 if I didn't qualify for the Means Test for the Chapter 7, any luck on this?" He received a reply stating: "We will review your file regarding the means testing and get back to you when we send your additional documents. We should be e-mailing them to you by tomorrow morning." On November 13, 2005, the date the documents were finally complete and sent to the Debtor for filing, CCSA sent the Debtor its assessment of the means test:

> According to the monthly income and expenses you provided, and after sub-tracting all allowable deductions as alowed *[sic]* under the bankruptcy laws, you and your wife have over $900 left over each month. You definitely don't qualify for Chapter 7. If you convert to Chapter 13, your monthly payment will be over $900 per month. Your combined annual gross income is over $114,000 per year. Your best bet is for us to contact the company that served the garnishment and try to work out a monthly payment plan.

After being questioned by the debtor as to why the numbers on the means test form (Form 22A) were different from those on Schedule I, CCSA sent the following reply:

> Schedule J lists your actual claimed expenses. However, the new "means testing" provisions of the new bankruptcy laws disregards *[sic]* your actual claimed expenses and only allow standard deductions for various categories of living expenses, regardless of what your actual expenses are. [¶] For example, you might claim $250 a month on home improvements/repairs on Schedule J, but the new bankruptcy laws only allow you a certain amount ($1,400 monthly for example for a family of 3) for food, clothing, housekeeping items and miscellaneous living expenses. [¶] You might claim $200 a month for entertainment expenses, but the new means testing does not allow that. You might claim $600 monthly for a private school for your child, but the means testing provisions do not allow for a private school. [¶] Form B22A lists your combined gross monthly income and then subtracts standard allowable expenses in certain categories. That's why it is different from your actual expenses as claimed on Schedule J. Since your combined gross annual income is well over the median family income for your state, the new bankruptcy laws disregard your

actual expenses as claimed on Schedule J and use the authorized deductions as reflected on Form B22A. According to the new means testing laws, you have over $900 left over each month after legally allowable deductions from gross income.

■■■ Explaining the meaning, rationale and workings of a bankruptcy statute, rule or form constitutes the practice of law. This is particularly so with respect to untested, uninterpreted, novel and unfamiliar statutes, rules and forms. The application of the means test under 11 U.S.C. § 707(b)(2) is one of the most discussed new provisions of the BAPCPA. Most attorneys do not agree on how this section should be applied in practice, and little in the way of judicial interpretation has been issued so far. Thus, any attorney providing advice on whether a debtor is subject to the Chapter 7 means test would do so with reservations at this point. That a non-attorney not under the supervision of any licensed attorney would consider venturing into this area in any way is extremely disturbing. It also, following a consistent pattern, constitutes the unauthorized practice of law.

### g. *Inclusion of All Creditors*

■■■ The e-mail in which CCSA attached the prepared copy of the petition for the Debtor also included the following language: "After filing, you may add or delete creditors, if necessary, or make any other changes or amendments that you wish. You will have plenty of time to do so." This is an extraordinary piece of legal advice. Adding or deleting creditors can raise significant issues in a case. Under FRBP 2002(a), creditors in a chapter 7

case are entitled to twenty days' notice of, inter alia, (1) the meeting of creditors, (2) a proposed use, sale or lease of property of the estate, (3) a hearing on approval of compromise or settlement, (4) the hearing on the dismissal of the case, (5) certain requests for compensation or reimbursement, and (6) the time for filing proofs of claims. Lightly adding and deleting creditors could pose major problems to adequate notice of such items.

Deleting creditors, or adding them too late in the day, is extremely likely to prejudice creditors. They might have no notice of the bankruptcy. They could miss their deadline to file their proof of claim. They might not be aware of a critical hearing. And, most significantly for certain creditors, they might also miss the deadline for filing a nondischargeability complaint. Under FRBP 4007, nondischargeability complaints may only be filed up to the sixtieth day after the first day set for the meeting of creditors. If the creditors do not receive the appropriate notices, they will not meet the deadline. Advising the Debtor, with the words that he had "plenty of time" to add or delete creditors, not to be concerned about accuracy or timeliness was reckless at best. These words could have lured the Debtor into not making a timely search for all creditors and indeed not adding them as appropriate. This would have the effect of possibly prejudicing both them and the Debtor later.[19]

### h. *Questionnaire*

■■■ The Questionnaire itself requires little discussion. Mr. Bohl explained that CCSA uses the Questionnaire to simplify the language of the required forms to assist CCSA translate the an-

---

**19.** In the words of Judge Alan Jaroslovsky, "[t]he actions of [CCSA and Mr. Bohl] constitute a classic example of how bumbling non-lawyers can cause serious problems for their 'clients' even in very simple bankruptcy cases." *In re Powell,* 266 B.R. 450, 451 (Bankr.N.D.Cal.2001).

swers into the appropriate Schedules and the Statement of Financial Affairs. Under applicable case law, this is the unauthorized practice of law. "Soliciting information from a debtor [by use of a questionnaire] which is then typed into schedules constitutes the unauthorized practice of law." *Agyekum*, 225 B.R. at 702. Notably, the creation and use of the Questionnaire requires interpretation and understanding of the meaning of the questions in the Schedules and Statement of Financial Affairs. Bankruptcy petition preparers are prohibited from giving explanations or providing definitions of terms. *Taub*, 366 F.3d at 971.

### i. *Selection of Exemptions*

██ The Debtor testified in Court that he did not select his exemptions. Instead, Mr. Bohl stated that he and CCSA did. They apparently have a list of applicable state and federal exemptions and enter the one that seems to fit the best and yields the greatest amount. This, like the Questionnaire, requires little discussion, because it also is clearly the practice of law. The choice of exemptions involves an analysis of the debtor's assets and how they can be protected under various exemption choices. "[A]dvising of available exemptions from which to choose, or actually choosing an exemption for the debtor with no explanation, requires the exercise of legal judgment beyond the capacity and knowledge of lay persons." *Kaitangian*, 218 B.R. at 110; *see also In re Pillot*, 286 B.R. 157 (Bankr.C.D.Cal.2002).

### j. *Website*

██ Lastly, the Court turns to CCSA's website. Because the Debtor primarily relied on the information provided on the CCSA website and because internet-based bankruptcy petition preparers seem to be proliferating, it is worth noting in some detail the many issues raised by the text of the CCSA website. While Mr. Bohl revised and promised to revise further the website text during these proceedings, at the time Bernales accessed the site, it was chock full of both legal advice and inaccurate information in its Frequently Asked Questions section.[20]

For example, CCSA gives advice generically on whether certain debts are nondischargeable. "Can my creditors object to my bankruptcy discharge?" "Creditors rarely have grounds to object to your bankruptcy discharge and almost never do unless a particular debt was fraudulently incurred." The website discourages debtors from hiring attorneys, irrespective to the specific facts of their case. "Do I need an attorney to file bankruptcy?" "No. After you file bankruptcy, you will simply need to meet with a bankruptcy trustee. A typical trustee meeting lasts about 1–3 minutes and you do not need to be represented by an attorney. Individuals without attorneys filed an estimated 510,000 successful bankruptcies in the United States last year." The website even goes so far as to offer procedural advice. "If I have been served with a summons in a civil case, am I required to appear in court?" "No. A court summons is an official notification in a civil case that informs a defendant that a lawsuit has been filed against him or her. A defendant is not required to attend any scheduled court hearing or pretrial conference unless the defendant has a legal defense that he or she wants to present to the court. If the defendant fails to appear in court, the case will be uncontested and a court judgment will be entered

---

**20.** Although this fact has no bearing on the Court's decision in this case, this Court takes note of the fact that Mr. Bohl and CCSA have made little to no revisions to their website despite the helpful recommendations by both the Court and the U.S. Trustee.

against him or her by default. However, if the defendant subsequently files bankruptcy, the court judgment will be null and void under section 524 of the United States Bankruptcy Code and the debt will be discharged." And the list goes on and on.

All of this generic advice can make a huge difference in an individual case and be extremely harmful. It far exceeds the limited role of the typist. Worse, there are no disclaimers recommending that debtors get specific advice in their individual cases. Quite the opposite—the website discourages debtors from going to attorneys, regardless of the complexity of their individual situations. Mr. Bohl's and CCSA's livelihood appears to depend on this. The theme seems to be to lure debtors into using CCSA and then try to help them quickly slip through the system before anybody notices. This is practicing law in its worst and sloppiest form.

■■■ This Court wishes to make clear that it is explicitly not making a finding that CCSA or Mr. Bohl have engaged in the unauthorized practice of law by merely providing legal information to debtors through its website. Mr. Bohl asserted that the information on CCSA's website is analogous to legal literature, which he contends he is lawfully permitted to distribute without a license to practice law under the First Amendment. Putting aside the question of whether distribution of legal information constitutes the unauthorized practice of law, it is clear that much of the information on the website is nonetheless "fraudulent, unfair, or deceptive" under 11 U.S.C. § 110(i)(1). As section 110(i)(1) is a valid regulation of commercial speech, any First Amendment concerns raised by Mr. Bohl are not implicated here. As discussed in depth in *In re Doser*, 412 F.3d 1056, 1062–64 (9th Cir.2005), the regulation of bankruptcy petition preparers under section 110(i) complies with the four-part

test used to evaluate the protection due commercial speech under *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562–63, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). This discussion does not address accurate, non-misleading information provided as general information on a website.

B. *Other Violations of § 110 Involving Lack of Required Disclosures*
1. *11 U.S.C. § 110(b)(2)(B)*

Before preparing any document for filing or accepting any fees from the Debtor, CCSA and Mr. Bohl were required to provide the Debtor with written notice (Form B1 9B) informing him "in simple language that a bankruptcy petition preparer is not an attorney and may not practice law or give legal advice." 11 U.S.C. § 110(b)(2)(B). The form "may contain a description of examples of legal advice that a bankruptcy petition preparer is not authorized to give." *Id.* Finally, this form "shall be signed by the debtor, and under penalty of perjury, by the bankruptcy petition preparer" and be filed with the petition. *Id.* Unfortunately, none of this, apparently, was ever done. Had CCSA and Mr. Bohl provided Form B19B to the Debtor, one might imagine that the entire unauthorized practice of law problem might have been abated, since the notice would make the Debtor aware of the limitations on CCSA and Mr. Bohl. The failure to provide this form is significant and had potentially harmful consequences.

2. *11 U.S.C. § 110(h)(2)*

Finally, 11 U.S.C. § 110(h)(2) requires that "[a] declaration under penalty of perjury by the bankruptcy petition preparer shall be filed together with the petition disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor

...." This, however, was not done. Bernales testified in court that he paid CCSA $195, but this was never disclosed. Thus, CCSA and Mr. Bohl violated this section also.

### C. Sanctions
#### 1. Fines or Damages to be Paid to the Debtor and U.S. Trustee

■ "All fees charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g)." 11 U.S.C. § 110(h)(3)(B). In light of CCSA's and Mr. Bohl's violations of 11 U.S.C. § 110(e) and other provisions of section 110, this Court orders the disgorgement of all fees paid by the Debtor.

In addition, under 11 U.S.C. § 110(i), "[i]f a bankruptcy petition preparer violates this section or commits any act that the court finds to be fraudulent, unfair, or deceptive, ... after notice and a hearing, the court shall order the bankruptcy petition preparer to pay to the debtor (A) the debtor's actual damages; (B) the greater of (I) $2,000; or (ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and (C) reasonable attorneys' fees and costs in moving for damages under this subsection." 11 U.S.C. § 110(i)(1). In order for 11 U.S.C. § 110(h)(3)(B) not to be a superfluous provision, this Court understands 11 U.S.C. § 110(i)(1) to provide supplementary damages to the Debtor in addition to fee disgorgement under subsection (h)(3)(B). Since Debtor has not proved actual damages, this Court will order an additional fine of $2,000 to be paid to the Debtor.

Under 11 U.S.C. § 110(l)(1), "[a] bankruptcy petition preparer who fails to comply with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more than $500 for each such failure." Here, although CCSA's and Mr. Bohl's failures have been extensive, this Court believes an additional fine of $2,000 against CCSA and Mr. Bohl to be a sufficient sanction for their conduct in this case. Pursuant to 11 U.S.C. § 110(l)(4), this amount shall be paid to the U.S. Trustee.

CCSA and Mr. Bohl shall be jointly and severally liable for all of the above fines and the fee disgorgement. CCSA and Mr. Bohl are ordered to disgorge such fees and pay such fines by no later than June 30, 2006. They are further ordered to provide proof of payment to the court within ten (10) days after disgorging their fees and paying the above fines. Failure to comply with the these terms may result in a finding that Mr. Bohl and CCSA are in civil contempt, which could result in assessment of fines and/or penalties, sanctions, incarceration, or further injunctive relief.

#### 2. Injunction

■ At the March 15, 2006 hearing, the United States Trustee filed with the court a request for judicial notice, which detailed prior related misconduct by CCSA, Mr. Bohl and others.[21] The first exhibit to the request for judicial notice was an order entered on September 17,

---

**21.** At the March 15, 2006 hearing, before Mr. Bohl had been made aware that the court had copies of these orders, Mr. Bohl insinuated that he had never had any trouble with any other court before. After he was aware that the court knew of these orders, he openly misrepresented the substance of both of these orders and the facts on which they were based, notwithstanding the clarity and scope of the above orders. He stated these orders were because of a purported prohibition against legal how-to books and a $50 cap on what you can pay to bankruptcy petition preparers, neither of which are mentioned in the orders.

2004 in the U.S. Bankruptcy Court of the Southern District of Texas entitled Order for Disgorgement, Payment of Fine and Permanent Injunction Prohibiting Greg Bohl, Garo G. Anadolian and Consumer Credit Services of America from acting as Bankruptcy Petition Preparers in the State of Texas. The order specifically found that CCSA, Mr. Bohl and others had engaged in the unauthorized practice of law and had violated 11 U.S.C. § 110. In light of that, the order permanently enjoined them from acting as bankruptcy petition preparers in Texas, ordered a disgorgement of fees and find them $200, payable to the United States Trustee.

The request for judicial notice also included an order entered on September 29, 2004 in the U.S. Bankruptcy Court of the Western District of Texas. This order specifically found that Mr. Bohl, CCSA and their agents and employees had been engaging in (1) advising persons concerning the filing of a chapter 7 bankruptcy case, (2) advising persons or assisting persons in the selection of exemptions, (3) advising persons as to what property or debts should be listed, or soliciting information from them to reformulate onto the petition, schedules and statement of financial affairs, (4) advising persons how to list debts as secured, unsecured or priority, (5) defining terms for persons such as executory contracts, leases, exemptions and reaffirmation, (6) directing persons to portions of a statute or other materials for explanations of exemptions, how to schedule property and what will happen in a bankruptcy case, (7) collecting fees for acts and conduct which constitute the practice of law, which Mr. Bohl and CCSA were not licensed to practice, (8) giving advice or rendering any service requiring the use of legal skill or knowledge. Based on the foregoing, the court, *inter alia,* ordered a disgorgement of fees, fined CCSA and Mr. Bohl $500, and permanently enjoined them "from rendering legal advice and preparing or assisting in the preparation of any document to be filed in any bankruptcy case in any bankruptcy court in the Western District of Texas, whether over the internet, via e-mail, computer software or any other electronic transmission, or by any other means."

Given the extensive violations in this and prior cases and, an injunction is also appropriate under 11 U.S.C. § 110(j). Under this section, the Court may "enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer." Under *Demos v. Brown (In re Graves),* 279 B.R. 266, 272 (9th Cir. BAP 2002), this Court may issue such an injunction *sua sponte.* This Court may grant such an injunction against CCSA and Mr. Bohl if it finds that they have "engaged in conduct in violation of this section or of any provision of this title." 11 U.S.C. § 110(j)(2)(A)(i)(I). As shown from this and prior cases, CCSA and Mr. Bohl have continuously engaged in extensive violations of 11 U.S.C. § 110, and likely other sections of the Code as well.[22] They have also shown a total lack of remorse or reflection, rather Mr. Bohl objects to "being treated like a criminal." As such, I find that CCSA's and Mr. Bohl's wrongful conduct could not be halted by mere injunction against improper conduct itself. Thus, this Court permanently enjoins CCSA and Mr. Bohl from further

---

**22.** For the sake of completeness, I should note that, in addition to their violations of 11 U.S.C. § 110, there also appear to have been violations of 11 U.S.C. §§ 527 and 528. It appears that disclosures were not provided to the Debtor, as required by 11 U.S.C. § 527(a) and (b). Also, a review of CCSA's website reveals that it failed to provide the required "debt relief agency" disclaimer, as required by 11 U.S.C. § 527(a)(4).

acting as bankruptcy petition preparers in the Central District of California, whether over the internet, via e-mail, computer software or any other electronic transmission, or by any other means.

## IV. Conclusion

It is apparent that, at best, CCSA and Mr. Bohl are confused about what the practice of law is. While completing the Official Bankruptcy Forms is an extremely difficult task for an individual with little or no knowledge of bankruptcy laws, it is clear that CCSA and Mr. Bohl, no matter what their self-perceived knowledge of bankruptcy may be, are not qualified under the law to assist debtors by offering legal advice.

CCSA and Mr. Bohl did even what the most preeminent bankruptcy petitioner in Florida would be forbidden to do: they practiced law in California. If anything, this case exemplifies why competent legal counsel is important: they are familiar with local rules and procedures, they are in close proximity with the client if he or she needs assistance, and they can give debtors the legal advice that they need. This is not so with bankruptcy petition preparers like CCSA and Mr. Bohl. Because of their unfamiliarity with the law and procedure of this district, their lack of proximity to the Debtor and their inability to give competent legal advice, their actions ultimately had unfortunate consequences for Bernales, whose case was dismissed for failure to file all of the required documents, including any credit counseling certificate. Although the Court sympathizes with indigent debtors, this is no justification to turn a blind eye to the unauthorized practice of law by bankruptcy petition preparers, especially as they often tend to cause far more harm than good.

In conclusion, this Court has determined the appropriate sanction to be (1) disgorgement of fees, (2) a fine of $2,000 to be paid to the Debtor, (3) a fine of $2,000 to be paid to the U.S. Trustee, and (4) a permanent injunction prohibiting CCSA and Mr. Bohl from further acting as bankruptcy petition preparers in the Central District of California, whether over the internet, via e-mail, computer software or any other electronic transmission, or by any other means.

**IT IS SO ORDERED.**