In re Naana G. AGYEKUM, Debtor.

**Aaron E. HASTINGS, dba Court Services, Appellant,**

v.

**UNITED STATES TRUSTEE, Appellee.**

**BAP No. NC–97–1820–RRYJU.**
**Bankruptcy No. 97–47332–ND.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 25, 1998.

Decided Oct. 6, 1998.

Aaron E. Hastings, Suisun City, CA, Pro se Appellant.

Mark L. Pope, Office of United States Trustee, Oakland, CA, for United States Trustee.

Before: RUSSELL, RYAN, and JURY,[1] Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

The bankruptcy court determined that a bankruptcy petition preparer's fee was unreasonable and ordered the preparer to disgorge the amount in excess of the limit set forth in the Bankruptcy Petition Preparer Guidelines of the United States Bankruptcy Court for the Northern District of California. The petition preparer appeals. We AFFIRM.

## I. FACTS

Naana Agyekum and appellant Aaron Hastings ("Hastings"), dba Court Services, a bankruptcy petition preparer ("BPP"), entered into a written Service Agreement ("Agreement") in May 1997. Under the Agreement, Hastings agreed to prepare a

---

1. Hon. Meredith A. Jury, Bankruptcy Judge for the Central District of California, sitting by designation.

chapter 7[2] petition for Agyekum within 15 days of receipt from her of the information necessary to prepare the petition. Agyekum agreed to pay a total fee of $135, and paid a deposit of $100 upon the execution of the Agreement.

The $135 fee included $15 in costs and a nonrefundable $25 "document license fee" for the use of "copyrighted intellectual property" prepared by Hastings. The pre-printed materials consisted of literature entitled "Fast Facts Guide" and "InfoForm Questionnaire." The Guide provided information about the bankruptcy process, and the Questionnaire functioned to obtain a client's pertinent information for the completion of a bankruptcy petition.

In June 1997, Hastings received Agyekum's Questionnaire along with a payment of $43. Agyekum paid an additional $8 over the $35 balance due because she wanted "priority handling" of her paperwork. "Priority handling" of the bankruptcy documents meant that the papers would be ready for her to file with the bankruptcy court within one day of receipt of a completed Questionnaire.

Hastings reviewed Agyekum's completed Questionnaire and determined that she had omitted 15 items of information necessary for the proper completion of the petition. Hastings sent a certified letter dated June 23, 1997 to Agyekum with a multi-page form detailing the omissions and requesting that she furnish the missing information. Hastings also assessed Agyekum a $15 penalty for her submission of an incomplete Questionnaire, as allowed under the terms of the Agreement.[3] Agyekum did not respond to the letter.

On July 2, 1997, Hastings sent Agyekum a second certified letter, informing her that her failure to timely respond to Hastings' request for the submission of a completed Questionnaire would result in the cancellation of the Agreement. Hastings assessed Agyekum another $15 penalty for the delay in processing her papers. On July 23, 1997, Agyekum returned the completed multi-page form with the information requested by Hastings, with a $30 payment for the penalty charges imposed by him. One day later, on July 24, 1997, Hastings forwarded the completed petition to Agyekum via priority mail.

On July 30, 1997, Agyekum (hereinafter the "debtor") filed a voluntary chapter 7 petition and schedules in *propria persona.* The trustee determined that the case was a no-asset case because the schedules reflected insubstantial assets. The debtor's schedules listed no real property, personal property worth $14,108, secured claims of $12,738, and unsecured nonpriority claims of $24,891.

The petition included Hastings' § 110 Disclosure of Compensation Statement ("Compensation Statement"), which was signed by the debtor as well as Hastings. The Compensation Statement reflected that she paid Hastings a total of $173, as follows: a $120 service fee, a $25 "document license fee," and $28 in costs, consisting of $17 in postage for priority, first class and certified mailings, $7 for photocopies, $2 for supplies, and $2 for telephone charges. The "priority handling fee" of $8 and the two penalty charges totaling $30 were unaccounted for in the Compensation Statement.

The debtor also filed a Statement by Debtor Not Represented by an Attorney ("Debtor's Statement"), which contained the same information as Hastings' Compensation Statement. The debtor later filed a second Debtor's Statement on September 8, 1997, which reflected that she paid Hastings $200 for his assistance in preparing her bankruptcy petition.

On September 10, 1997, the United States Trustee (the "UST") filed a motion pursuant to § 329(b) and Rule 2017(a) for review of the fees charged by Hastings for his preparation of the debtor's petition ("motion for re-

**2.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**3.** Certain portions of the Agreement are attached to Hastings' § 110 Disclosure of Compensation Statement. The Agreement contains a provision for changes, delays, and incomplete forms. The provision provides in part that "[d]elays in submitting the InfoForm may be charged $15 plus $15 more for each 15 day delinquency."

view"). The UST asserted that the $200 paid to Hastings by the debtor exceeded the reasonable value of his services to her. The UST requested that Hastings be ordered to disgorge the fee, to the extent that it was excessive, to the trustee.

Hastings filed an answer to the UST's motion for review in which he asserted that the imposition of extra fees were justified in situations where he must perform work after the completion of a petition as a result of a client's error or delay. Hastings maintained that such additional services were reasonably compensable. Hastings argued that the imposition of monetary penalties upon his clients functioned to curtail the problem of delays in the preparation of the bankruptcy documents. Moreover, Hastings claimed that monetary penalties provided him with an adequate remedy against clients who were uncooperative and failed to comply with the terms of the Agreement.

Hastings pointed out that the total fee of $173 was shown in both the Compensation Statement and the Debtor's Statement that were filed with the petition. Hastings provided two versions of the how he calculated the total fee. Hastings first stated that the total fee was the sum of "$100 + $43 + $30." Hastings then stated that the total fee consisted of $148 plus a "document license fee" of $25.

The court held a hearing on the motion for review in October 1997, and determined that the $173 fee charged by Hastings was excessive.[4] The court found that Hastings' obligation to the debtor was only to prepare the petition based upon whatever information the debtor provided, and the fact that Hastings put forth extra efforts to procure the necessary information from the debtor did not justify additional compensation. The court found that the maximum amount of $125 allowed under the Guidelines was reasonable compensation for his services to the debtor in this case.

The court also determined that the $25 "document license fee" for the use of Hastings' "copyrighted intellectual property" was a fee that came under the purview of the Guidelines. The court found that Hastings' pre-printed materials functioned to assist debtors in the preparation of their bankruptcy petitions and that such assistance was not intellectual property. Moreover, the court noted that Hastings was in all likelihood engaging in the practice of law. The court entered an order pursuant to §§ 110(h)(1) and 329(b) which limited Hastings' fee to the $125 amount provided for by the Guidelines, and required him to disgorge the $48 which he received in excess of the maximum fee. Hastings appeals.

## II. STANDARD OF REVIEW

A bankruptcy court's finding of violations under § 110 is reviewed under the abuse of discretion standard and its conclusions of law are reviewed *de novo*. *In re Fraga*, 210 B.R. 812, 816 (9th Cir. BAP 1997).

## III. ISSUES

A. Whether the bankruptcy court abused its discretion in limiting appellant's fee to the maximum amount of $125 allowed under the Guidelines.

B. Whether the bankruptcy court properly determined that appellant was not entitled to compensation for the debtor's use of appellant's pre-printed, bankruptcy-related materials.

## IV. DISCUSSION

A. *Whether The Bankruptcy Court Abused Its Discretion In Limiting Appellant's Fee To The Maximum Amount Of $125 Allowed Under The Guidelines*

Section 110[5] governs the responsibilities and duties of bankruptcy petition preparers

---

4. The court considered the $173 amount as listed on the first Debtor's Statement. The court disregarded the $200 as listed on the second Debtor's Statement without any objection from the UST.

5. Under § 110, a bankruptcy petition preparer must set forth his name, address, social security number, and signature on the petition, and must provide a copy of the petition to the debtor. A petition preparer is prohibited from executing any document on behalf of a debtor, using the word "legal" or any similar term in any advertisements, and collecting or receiving any payment from the debtor for court fees in connection with filing the petition. Moreover, a petition

in rendering services to debtors. Subsection 110(h) authorizes the disallowance of fees found to exceed the value of the services rendered by BPPs and states in pertinent part:

(h)(1) Within 10 days after the date of the filing of a petition, a bankruptcy petition preparer shall file a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor.

(2) The court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee referred to in paragraph (1) found to be in excess of the value of services rendered for the documents prepared. An individual debtor may exempt any funds so recovered under section 522(b).

11 U.S.C. § 110(h).

■ Section 329 also regulates the compensation allowed to both attorneys and lay persons who prepare bankruptcy petitions. *In re Telford,* 36 B.R. 92, 94 (9th Cir. BAP 1984). Section 329(b) provides:

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

■ A trial court has the power to establish a presumptive "reasonable value" of legal fees in consumer bankruptcies, and to limit fees to a certain level unless counsel establishes that services in a particular case can justify more. *In re Agnew,* 144 F.3d 1013,

1013 (7th Cir.1998) (stating that each bankruptcy judge was entitled to draw a line over which a fee would be examined and that if a petition preparer's services were worth more in a given case, the petition preparer must demonstrate that fact).

Local Rule 9019–1 of the United States Bankruptcy Court for the Northern District of California allows its bankruptcy judges to promulgate guidelines to inform the bar and the public how they will handle the activities of BPPs under § 110. The Guidelines, which were promulgated pursuant to Local Rule 9029–1, provide in part that "[t]he maximum allowable charge for a bankruptcy petition preparer's services is $125, including any and all expenses such as photocopying, messenger or courier charges, postage, telephone, etc."

Hastings argues on appeal that the Guidelines are by definition flexible and subject to alteration wherever appropriate, and that the court erroneously interpreted the Guidelines as an absolute rule and abused its discretion by failing to consider any business circumstances (which he characterizes on appeal as "special circumstances") that would justify the allowance of a fee higher than the one provided in the Guidelines. Specifically, Hastings defines "special circumstances" as those which are inherent in a typing service or BPP business. Hastings claims that debtors who submit inaccurate information or cause delays in a BPP's completion of bankruptcy documents disrupt the operation of the business, thereby causing the BPP to exert additional resources to complete the paperwork.

Hastings asserts that the threat of cancellation of the Agreement and the imposition of monetary penalties is the only effective method by which to encourage a client's timely submission of the information needed to prepare a petition. Hastings maintains that the court's strict application of the Guidelines weakens his ability to enforce contractual agreements with his clients.

---

preparer must file a declaration disclosing any fee received or charged to a debtor. A petition preparer is subject to a $500 fine for each violation of § 110 and damages arising from a cause of action for negligence. In addition, the bankruptcy trustee, creditor, or UST may bring an action to enjoin a petition preparer from engaging in conduct that violates § 110. *See generally* 11 U.S.C. § 110.

The UST argues that the court did in fact consider the nature of such business circumstances at the hearing on the UST's motion for review of fees. In addition, the UST contends that this case presented no "special circumstances" that would justify the departure from the fee set forth in the Guidelines. We agree.

At the hearing on the motion for review of the fees, the court considered the issue of compensation for additional services:

THE COURT: You're limited, even though you have given additional documents to the Debtor in terms of information, I'm going to limit you to $125 as reasonable compensation for doing the only thing that you're allowed to do, which is to prepare the petitions based upon the debtors having filled them out and your typing them. And that's it.

MR. HASTINGS: May I ask one other question, Your Honor? *There's the matter of uncompensated additional work which is necessary to perform when the debtor withholds his or her pledged cooperation from the process.* In that case, we are forced to, in some cases, redo work or we are forced to get after a debtor repeatedly, in this case, in the form of several certified letters that were sent. We had to threaten cancellation and so forth because the [d]ebtor ignored our attempts to gather the information necessary to complete the petition. When we finally did—

THE COURT: What do you care if all you are is a typing service? Why are you even bothering sending anybody certified letters to do anything? All they are doing—and this is all this fee contemplates and frankly all you're allowed to do.

(Emphasis added.) The court further stated:

THE COURT: ... I don't think there's anything in [§ 110(i)] that says that you're responsible for making sure—any more than an attorney is responsible—for mak-

ing sure that a debtor does all the things it's supposed to do in terms of getting the papers ready....

■ The transcript clearly reflects that the court considered Hastings' argument for compensation for additional services and that Hastings failed to show that this particular case presented any special or extraordinary circumstances that would warrant a fee over the maximum allowable amount under the Guidelines.[6]

Hastings also argues that the Guidelines' fee limit of $125 has not increased to accommodate the increase in the costs of doing business. Hastings asserts that the court's strict application of the Guidelines will result in the destruction of his business because the $125 allowed by the Guidelines is so unreasonably low that it prevents the most efficient BPPs from earning even a modest living. He argues that while as many as half of his cases are easily prepared within the Guidelines, it is not possible for him to prepare all cases that he is qualified to accept for this amount. He asserts that the court's "unwavering" application of the $125 maximum to all of Hastings' cases, including those not yet filed, exceeded its discretion.

We are not persuaded. The question before us is the propriety of the fee allowed in *this* case, not whether there is another case in which the court should allow Hastings a fee in excess of $125. The court did not err in limiting the fee allowed to Hastings for his services to the debtor.

B. *Whether The Bankruptcy Court Properly Determined That The Appellant Was Not Entitled To Compensation For The Debtor's Use Of The Appellant's Pre-Printed Bankruptcy–Related Materials*

Hastings contends that the court's interpretation of the Guidelines prevents BPPs from receiving compensation for goods and

---

6. The $125 maximum allowable fee provided in the Guidelines functions to combat inconsistent fee calculations, among other things. The record reflects inconsistent calculations by Hastings. Specifically, ·in the Compensation Statement, Hastings provided the following breakdown of his $173 fee: a service fee of $120, costs totaling $28, and a "document license fee" of $25. Ac-

cording to Hastings, however, his total fee is composed of the following: a service fee of $95, costs of $15, a "document license fee" of $25, a priority handling fee of $8, and penalty charges of $30. Hastings offers no explanation for the inconsistent calculations of his petition preparation fee.

services that are not prohibited under § 110. Hastings argues that there are a number of compensable services that BPPs may perform in addition to typing, which are not prohibited under §§ 110 or 329. Hastings asserts that the "document license fee" which he charges for the use of his "copyrighted intellectual property" is such a compensable service, and that the court erred in disallowing compensation for the debtor's use of the materials.

The UST argues that Hastings' purported "intellectual property" constitutes the unauthorized practice of law. The UST further contends that the debtor's certification to the court that Hastings' services did not include legal advice does not provide the irrebuttable presumption that no unauthorized practice of law took place. We agree.

Hastings' "copyrighted intellectual property" consists of a "Fast Facts Guide" and "InfoForm Questionnaire," containing approximately 170 pages of bankruptcy-related information. The Agreement describes the "Fast Facts Guide" as follows:

> This informative bankruptcy guide is packed with useful information intended to guide you through the entire process. There are specific sections pertaining to your Bankruptcy Estate, secured property, the § 341 Meeting, the Trustee, Administrative cases, Property Exemptions, things to avoid when filing bankruptcy, things to consider before filing, how to negotiate with secured creditors, a rich glossary of bankruptcy terms, and more. And, it's available only from Court Services!

█ Section 110(k) provides that "[n]othing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law." [7] In California, the practice of law is defined as follows:

> [A]s the term is generally understood, the practice of law ... includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be pending in a court. [citations omitted].

*In re Glad,* 98 B.R. 976, 977 (9th Cir. BAP 1989).

The Guidelines specifically provide that a BPP may not advise a debtor concerning the following:

> (i) Whether to file a bankruptcy petition;
>
> (ii) Under which chapter of the Bankruptcy Code to file the voluntary petition;
>
> (iii) How to respond to the bankruptcy forms required in connection with the filing of the bankruptcy case;
>
> (iv) What exemptions should be claimed;
>
> (v) Whether any particular debts are dischargeable or nondischargeable;
>
> (vi) The effect of a bankruptcy filing upon a foreclosure and whether the debtor(s) may keep a home;
>
> (vii) Whether the debtor(s) may avoid or eliminate any liens or recover any assets in connection with the bankruptcy case;
>
> (viii) Whether the debtor(s) may redeem property;
>
> (ix) Whether the debtor(s) may or should reaffirm any debts;
>
> (x) Whether the debtor(s) is entitled to a discharge under the Bankruptcy Code; and
>
> (xi) Concerning the tax consequences of any aspect of the bankruptcy case.

Bankruptcy Petition Preparer Guidelines of the United States Bankruptcy Court for the Northern District of California.

The bankruptcy court found that the $25 "document license fee" for the debtor's use of Hastings' "copyrighted intellectual property"

---

7. Congress enacted § 110 in response to the proliferation of bankruptcy petition preparers nationwide. As stated in the legislative history of § 110:

> While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advise and legal services to debtors. These

> preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.

H.R. Rep. 103–834, 103rd Cong., 2nd Sess. 40–41 (Oct. 4, 1994); 140 Cong. Rec. H10770 (Oct. 4, 1994).

was simply another fee that was subject to the fee limitation of the Guidelines. At the hearing for the motion to review fees the following exchange between the court and Hastings transpired:

THE COURT: Oh, there's the 25—extra 25.

MR. HASTINGS: Yes, Your Honor. We've separated that because we feel that those fees do not come under the provision of Section 110 or Section 329.

THE COURT: What are those fees for?

MR. HASTINGS: That's a documents license fee for the use of our copyrighted intellectual property.

THE COURT: You can call it anything you want. It's still a fee; it's still a part of what you're charging the Debtor, and it's going to be added in.

MR. HASTINGS: But, Your Honor, we don't see any difference between that—any substantive difference between our selling our intellectual property—

THE COURT: You're not selling intellectual property.

MR. HASTINGS: But we are, You Honor—

THE COURT: No, you're not.

MR. HASTINGS: —in the same way that Nolo Press sells their intellectual property, yet does not come under the Court's guidelines.

THE COURT: If you want to go into the publishing business, feel free, but assisting a Debtor in the preparation of bankruptcy petitions is not intellectual property. I'm sorry.

. . .

THE COURT: If you've designed—that would be like the lawyer charging an additional amount for representing a debtor because he's got special features on his software that he designed. There's not going to be a separate fee allowed for that.

▆▆ The record before us reflects that Hastings' services extended beyond typing to the impermissible practice of law. The court noted:

THE COURT: ... There seems to be somewhat of a misapprehension on your part as to what you are allowed to do, ... and under the criminal laws of California, you are only allowed to type those papers. That's it.

MR. HASTINGS: Well, that's what we do, Your Honor, but—

THE COURT: It sounds like you do a lot more than that.

MR. HASTINGS: Such as?

THE COURT: Such as advising the debtor that they need to do this, that, or the other thing, which probably, if I were guessing, if I were standing there, I would tell you is probably practicing law.

Hastings' "Fast Facts Guide" not only provided information about the bankruptcy process, it provided information on what to consider when filing bankruptcy as well as a glossary of bankruptcy terms. The "Info-Form Questionnaire" functioned to solicit information to be used to complete bankruptcy schedules. Soliciting information from a debtor which is then typed into schedules constitutes the unauthorized practice of law. *Glad,* 98 B.R. at 978; *In re Anderson,* 79 B.R. 482, 485 (Bankr.S.D.Cal.1987). Thus, the court properly determined that Hastings was not entitled to receive compensation for the debtor's use of pre-printed bankruptcy materials.

## V. CONCLUSION

The court properly exercised its authority in limiting the appellant's petition preparation fee to the maximum fee allowed under the Bankruptcy Petition Preparer Guidelines of the United States Bankruptcy Court for the Northern District of California. The court also properly determined that the appellant was not entitled to receive compensation for the debtor's use of appellant's pre-printed bankruptcy materials. Accordingly, we AFFIRM.