In re Jacqueline Susan **HILL**, Debtor.

Claudia J. **Plotnick**, Appellant.

BAP No. AZ–10–1344–MkPaJu.
Bankruptcy No. 10–19917–JMM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted On Feb. 17, 2011.

Decided May 17, 2011.

Ordered Published May 26, 2011.

Appellant Claudia J. Plotnick, pro se, argued on her own behalf.

Before: MARKELL, PAPPAS and JURY, Bankruptcy Judges.

## OPINION[1]

MARKELL, Bankruptcy Judge:

### INTRODUCTION

Appellant Claudia J. Plotnick ("Plotnick") appeals the bankruptcy court's order under 11 U.S.C. § 110(h)[2] directing Plotnick to disgorge $50 of the $250 document preparation fee that she charged debtor Jacqueline S. Hill ("Hill") for helping prepare Hill's bankruptcy petition and related paperwork. We AFFIRM.

### FACTS

In June 2010, Hill, in propria persona, filed her chapter 7 petition. Plotnick, who is a Certified Legal Document Preparer ("CLDP") under Arizona law,[3] helped Hill prepare her petition and related paperwork, including Hill's schedules, accompa-

---

1. Originally filed as a Memorandum on May 17, 2011. Ordered published with minor non-substantive changes on May 26, 2011.

2. Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

3. Under Arizona law, CLDPs are "individual[s] or business entit[ies] certified ... to prepare or provide legal documents, without the supervision of an attorney, for an entity or a

nying statements, declarations and disclosures, and her master mailing list.[4]

Pursuant to § 110(h)(2), on June 29, 2010, Plotnick filed a disclosure reflecting that she charged and was paid $250 for her Petition Preparer services. Based on Plotnick's disclosure, on July 7, 2010, the bankruptcy court entered an order directing Plotnick to show cause why she should not be ordered to disgorge "any fees in excess of $200" paid to her in connection with Hill's bankruptcy case (the "OSC"). According to the OSC, "[t]he standard fee amount allowed to be paid to certified document preparers in Arizona for bankruptcy is $200." Order to Show Cause (July 7, 2010), at p. 1.

On July 28, 2010, Plotnick filed her response to the OSC. Her response is critical to the resolution of this appeal, so we will discuss it at length. Plotnick's response consisted of seven pages of argument and a two-page Exhibit "A", which Plotnick described as a printout of emails that she received from three of her customers in cases other than Hill's.

Plotnick's response began by explaining that Hill's California attorney Amanda Potier had referred Hill to Plotnick for assistance in filing bankruptcy in Arizona. According to Plotnick, Hill paid Potier $3,000 to prepare paperwork for a California bankruptcy filing that never was filed.

Plotnick then summarily described the services that she provided to Hill: "I obtained the information I needed from Ms. Potier and Mrs. Hill to complete the paperwork and the petition was ready for filing in one week, my routine turnaround time for completion." Response (July 28, 2010), at p. 1. Absent from Plotnick's summary description was any detail on how she obtained the information from Hill and Potier, or what steps were needed to input that information into the appropriate forms.[5]

member of the public who is engaging in self representation in any legal matter." Ariz. Code Judicial Admin. § 7–208(A). Certification of CLDPs is done by a Board of Legal Document Preparers. *Id.* § 7–208(D)(4). CLDPs may provide general legal information but may not give legal advice. *Id.* § 7–208(F)(1)(b). CLDPs who act in accordance with Section 7–208 are exempt from Arizona prohibitions regarding the unauthorized practice of law. Ariz. S. Ct. Rule 31(d)(24). For a fuller version of the relevant rules, see note 6 and accompanying text *infra*.

CLDPs are unique to Arizona, and have existed formally only since 2003. *See* Frances Johansen, *Historic Era Begins: New Rules Cripple UPL, Aid Consumers*, Ariz. Att'y, June, 2003, at 36.

4. The bankruptcy court neither raised nor explored the issue of whether Plotnick might have exceeded § 110's strict limits on services that a bankruptcy petition preparer ("Petition Preparer") may perform. The court focused exclusively on the issue of the value of Plotnick's permissible services.

Plotnick does not contend that the debtor or the estate might have employed her as a professional under § 327 given the relatively unique status that Arizona grants to CLDPs. Further, she concedes that she cannot receive compensation for services that § 110 prohibits her from performing. As a result, any services that she might have performed beyond those authorized by § 110 are not part of the issues on this appeal.

5. Later on in her response, Plotnick itemized the time she spent assisting Hill. This itemization provides a bit more information regarding Plotnick's services:

| | |
|---|---|
| Calls from/to Hill's California attorney | 1.3 |
| Emails from/to Hill's California attorney | 1.0 |
| Calls to/from Mrs. Hill | 1.5 |
| Emails to/from Mrs. Hill | 1.0 |
| Type bankruptcy petition, schedules, [etc.] | 3.0 |
| Meet with Mrs. Hill to review accuracy [etc.] | .8 |
| Total Hours Expended | 8.4 [*sic*] |

Response (July 28, 2010), at pp. 5–6. Even though mathematically incorrect, we will use this 8.4 hour number so as to correspond to the arguments made in Plotnick's brief.

Plotnick next set forth her relevant work experience and training. Plotnick's credentials admittedly were well-suited for providing assistance in the preparation of bankruptcy petitions and schedules. According to Plotnick, she had, in total, 35 years of bankruptcy-related experience, including serving as a clerk and secretary to a bankruptcy judge, working as a senior bankruptcy paralegal for an Arizona law firm, and providing contract paralegal services to other attorneys, banks and businesses. Plotnick also stated that she had been preparing bankruptcy documents for the public for the past 20 years, and that she had an unblemished reputation with the bankruptcy court and the office of the United States Trustee.

Plotnick also detailed how her expenses in serving as a CLDP in bankruptcy-related matters have increased over time. Plotnick figured that the costs of supplies and fees that she must pay have increased over the last several years by an aggregate amount of $1,000. According to Plotnick, there was no way for her to recoup these increased expenses, except by charging more for her document preparation services.

Most of the rest of Plotnick's response was devoted to why she believes the court's $200 "standard fee" (as referred to in the OSC) was unfair and unreasonably low. In essence, Plotnick argued that, when compared to the fees and fee increases that the bankruptcy court has allowed for bankruptcy attorneys, the $200 standard fee allowed for bankruptcy petition preparers was ridiculously small. Plotnick's reckoning of what bankruptcy attorneys charge was based upon her experience working for, with, and around them. Based on her prior law firm experience, Plotnick gave detailed figures and calculations concerning what law firms charged for attorney and paralegal time related to preparing and filing bankruptcy petitions.

Plotnick further asserted that the court's $200 standard fee had to be increased to ensure that she could recoup the expense increases that she had encountered over the last several years. She principally based this assertion on her perception of what was fair, especially in light of what attorneys were allowed to charge for their services and the services of their employees. Plotnick's response contained little or no analysis comparing the nature and extent of attorney services to document preparer services.

Importantly, Plotnick's response contained no evidence in the form of affidavits or declarations in support of her position. Further, the sole unauthenticated exhibit she presented with her response—the email testimonials of three of her clients— had little bearing on the controlling issue under § 110: the reasonable value of her services to Hill.

Plotnick cited two Arizona bankruptcy court decisions: *In re Thueson*, No. 4:08– bk–10121, 2009 WL 1076888 (Bankr. D.Ariz. March 12, 2009); [6] and *In re Kassa*, 198 B.R. 790 (Bankr.D.Ariz.1996). She criticized these decisions as wrongly decided. Her concerns boil down to four grounds:

1. *Thueson* and *Kassa* erroneously decided that the maximum reasonable fee a Petition Preparer may charge in an Arizona bankruptcy is $200.

2. *Thueson's* and *Kassa's* reliance on legal secretary salaries in determining a presumptively reasonable fee was misplaced; the court should have, instead, looked at the rate at-

**6.** While *Thueson* is an unpublished decision it is quite relevant here because the bankruptcy court expressly adopted its reasoning in ruling on the reasonableness of Plotnick's fees.

torneys charge their clients for paralegal services.

3. Unlike legal secretaries, CLDPs are required by Arizona law to meet certain minimum ethical, educational and experiential requirements that make their services more valuable than legal secretary services.

4. It was "fundamentally unfair" for the court to sua sponte raise and consider the reasonableness of her Petition Preparer fee.

Response (July 28, 2010), at pp. 3–4. Most of the rest of Plotnick's Response addressed the public benefit that Arizona derives from CLDPs.

On August 2, 2010, the court held a hearing on its OSC and Plotnick's response. Significantly, Plotnick did not ask either at the hearing or in her response for an opportunity to submit evidence or to call witnesses to testify. The court and Plotnick engaged in a colloquy during which Plotnick made essentially the same points she had asserted in her brief, and the court made essentially the same points it had set forth in *Kassa* and *Thueson*. Ultimately, the court concluded that Plotnick had not established her entitlement to any fees in excess of $200. It thus entered an order directing Plotnick to turn over the excess $50 that she had received from Hill to the chapter 7 trustee.

Plotnick timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion when it disallowed $50 of Plotnick's $250 Petition Preparer fee?

## STANDARD OF REVIEW

■ We review a bankruptcy court's order regarding the allowance of fees for abuse of discretion. *Law Offices of David A. Boone v. Derham–Burk (In re Eliapo)*, 468 F.3d 592, 596 (9th Cir.2006).

■ Under the abuse of discretion standard of review, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir.2009) (en banc). And if the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks omitted).

## DISCUSSION

To provide context, we first will briefly outline Arizona law and bankruptcy law regulating the activities of document preparers. Then we will turn our attention to the specifics of this case.

### 1. Relevant legal principles.

The Supreme Court of Arizona promulgates rules that govern the practice of law in Arizona (the "Ariz. S.Ct. Rules"). Only active members of the Arizona bar, and those who qualify as exempt, may practice law in Arizona. *See* Ariz. S. Ct. Rule 31(b). The Arizona Supreme Court has defined the "practice of law" to include, among other things, preparing documents which: (1) affect legal rights or (2) are meant for filing in any court, administrative agency or tribunal. *See* Ariz. S. Ct. Rule 31(a); *see also In re Bankruptcy Petition Preparers Who Are Not Certified Pursuant to Requirements of the Ariz. Supreme Court*, 307 B.R. 134, 141 (9th Cir.

BAP 2004) (hereinafter, *"BPP"*) (identifying other jurisdictions that have characterized similar services as the practice of law).

The Arizona Supreme court has designated a number of exemptions that permit non-attorneys to engage in activities that might otherwise constitute the practice law in certain circumstances. In particular, "certified legal document preparers" are permitted to perform services as set forth in Arizona's Code of Judicial Administration (hereinafter, "ACJA") § 7–208. *See* Ariz. S. Ct. Rule 31(d)(24). In turn, the ACJA delineates the specific services that CLDPs are authorized to perform.[7]

At the same time, § 110 governs the activities of non-attorney document preparers when they assist pro se debtors in preparing papers for filing in bankruptcy cases. Several courts already have published excellent recapitulations of the history leading up to the enactment of § 110, and we need not recount them here. *See, e.g., In re Guttierez,* 248 B.R. 287, 292 (Bankr.W.D.Tex.2000); *In re Farness,* 244 B.R. 464, 466–67 (Bankr.D.Idaho 2000). For our purposes, it suffices for us to say that Congress enacted § 110 in 1994, and amended it in 2005, in response to its perception that large-scale "bankruptcy mills" and other unscrupulous document preparers were abusing the bankruptcy

system, by causing debtors to file grossly inaccurate and incomplete bankruptcy petitions and schedules, sometimes without the debtors even being aware that they had filed for bankruptcy. *See* 248 B.R. at 292.

Unlike the Arizona Rules, which allow CLDPs to perform a limited range of simple legal tasks without attorney involvement, § 110 restricts the activities of Petition Preparers to " 'the modest service of transcribing or typing bankruptcy forms that the debtors alone must prepare without assistance' and 'other sorts of services ... can *perforce* not be compensated.' " *Scott v. U.S. Trustee (In re Doser),* (hereinafter, *"Doser I"*), 412 F.3d 1056, 1065 (9th Cir.2005) (quoting *In re Bush,* 275 B.R. 69, 84 (Bankr.D.Idaho 2002)) (emphasis in original); *see also BPP,* 307 B.R. at 143 (referencing § 110's legislative history, which states that "it is permissible for a [Petition Preparer] to provide services solely limited to typing").

In one respect, Arizona law might be read as being more restrictive than § 110. Under one construction of Arizona law, CLDPs are the only non-attorneys who may assist a pro se in preparing legal documents for filing in court—even if that assistance is limited to mere typing services.[8] For the apparent purpose of pre-

---

7. The ACJA Provides:

  1. Authorized Services. A certified legal document preparer is authorized to:

    a. Prepare or provide legal documents, without the supervision of an attorney, for an entity or a member of the public in any legal matter when that entity or person is not represented by an attorney;

    b. Provide general legal information, but may not provide any kind of specific advice, opinion, or recommendation to a consumer about possible legal rights, remedies, defenses, options, or strategies;

    c. Provide general factual information pertaining to legal rights, procedures, or options available to a person in a legal

matter when that person is not represented by an attorney;

    d. Make legal forms and documents available to a person who is not represented by an attorney; and

    e. File and arrange for service of legal forms and documents for a person in a legal matter when that person is not represented by an attorney.

  *See* ACJA § 7–208(F).

8. *But see BPP,* 307 B.R. at 141–42 & n. 7 (declining to decide whether Arizona law permits preparers who are not CLDPs to provide mere "secretarial services" in relation to documents to be filed in court).

venting Petition Preparers in Arizona from engaging in the unauthorized practice of law, the Arizona bankruptcy court has promulgated a local rule providing that only CLDPs may act as Petition Preparers in the Arizona bankruptcy court. *See* Bankr. D. Ariz. Local R. 2090–2(a). This local rule carries out the plainly-expressed intent of § 110(k), which provides that nothing in § 110 is intended to permit the unauthorized practice of law as defined by each state. *See BPP*, 307 B.R. at 142–43 (upholding enforcement of the Arizona bankruptcy court's General Order no. 89, which was the precursor to Bankr. D. Ariz. Local R. 2090–2(a)).

## 2. Examination of Petition Preparer fees generally.

■ The bankruptcy court must disallow a Petition Preparer fee to the extent the court finds that the fee exceeds the value of the Petition Preparer's services. *See* § 110(h)(3). Either a party in interest by motion, or the court on its own initiative, may question the reasonableness of a Petition Preparer's fees. *See* § 110(h)(4).[9]

■ When the court or a party in interest questions the Petition Preparer's fee, the Petition Preparer must establish the value of her services. *Hastings v. U.S. Trustee (In re Agyekum)*, 225 B.R. 695, 699 (9th Cir. BAP 1998) (citing § 329 and *In re Agnew*, 144 F.3d 1013 (7th Cir.1998)). In other words, once the reasonableness of the Petition Preparer's fee has been raised, the Petition Preparer bears the burden of proof to establish the reasonableness of the fee. *See In re Doser*, 281 B.R. 292, 313 (Bankr.D.Idaho 2002) (hereinafter, *"Doser II "*), *aff'd*, 292 B.R. 652 (D.Idaho 2003), *aff'd*, *Doser I*, 412 F.3d 1056 (9th Cir.2005) (citing *In re Bush*, 275

B.R. at 85–86; and, *In re Geraci*, 138 F.3d 314, 318 (7th Cir.1998)).

■ Many courts, however, have established "presumptively-reasonable fees" for Petition Preparers and for attorneys. *See Doser II*, 281 B.R. at 316 n. 24 (listing Petition Preparer cases); *Eliapo*, 468 F.3d at 599–600 (listing attorney cases). If the Petition Preparer charges a fee at or below the presumptively-reasonable amount, and no one objects, the court ordinarily will not require proof of the reasonableness of the fee charged in a particular case, but rather will accept the fee as reasonable on its face. To the extent the Petition Preparer seeks compensation over and above the presumptively-reasonable fee, the Petition Preparer must prove that its services are worth more. *Agyekum*, 225 B.R. at 699; *see also Eliapo* 468 F.3d at 598–600 (approving the presumptive fee procedure in the examination of attorney fees).

## 3. Examination of Plotnick's Petition Preparer fee.

■ Plotnick here presented no admissible, relevant evidence in support of her arguments that she was entitled to a $250 fee in this case. We can affirm on this basis alone. Briefs and oral argument do not constitute evidence. *Sicherman v. Cohara (In re Cohara)*, 324 B.R. 24, 28 (6th Cir. BAP 2005); *see also British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978) ("legal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion"). While we often give pro se litigants leeway, we cannot credit as evidence unsubstantiated statements made by the

9. The court's express authority to sua sponte examine the reasonableness of a Petition Preparer fee was added to § 110 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109–8, 119 Stat. 23, and was clarified by the Bankruptcy Technical Corrections Act of 2010, Pub. L. 111–327, 124 Stat. 3557.

litigant in court filings or in open court without at least some sort of oath or affirmation regarding the truth of the matters asserted. *See Winterrowd v. Nelson,* 480 F.3d 1181, 1183 n. 3 (9th Cir.2007); *Lang v. Lang (In re Lang),* 293 B.R. 501, 512–13 (10th Cir. BAP 2003).[10]

Confronted with a lack of evidence, the bankruptcy court properly concluded that Plotnick had not established her entitlement to more than the standard fee of $200. Alternately, the court accepted at face value Plotnick's representation that she was entitled to compensation for the 8.4 hours she spent assisting Hill; however, when the court multiplied 8.4 hours by a presumptively-reasonable hourly rate of $23 per hour (based on *Kassa* and *Thueson*), the court determined that Plotnick still was not entitled to more than the standard fee of $200.

### 4. *Kassa* and *Thueson.*

Although we could and do affirm the bankruptcy court's decision based upon Plotnick's lack of evidence to support her claim for relief, we also canvass her legal contentions as they do not lead to reversal and are likely to recur. Before reviewing these contentions, however, an examination of *Kassa* and *Thueson* is appropriate.

In *Kassa,* the Arizona bankruptcy court held that, because Petition Preparers could do no more than type or transcribe for debtors, the most-appropriate reference point for determining a presumptively-reasonable Petition Preparer fee was the compensation earned by legal secretaries. 198 B.R. at 791. Based on its general knowledge of legal secretary salaries in Arizona, *Kassa* broke down a $35,000 annual secretarial salary to an hourly rate of $16.82. "($35,000 divided by 52 = $673.07 per week divided by 40 hours per week =

$16.82)." *Id.* at 792. The court then multiplied the $16.82 hourly rate by 12 hours (the court's estimation of how long it generally took to type the forms for a standard bankruptcy filing) to come up with a standard Petition Preparer fee of approximately $200. *Id.*

According to *Thueson, Kassa* was the source of the Arizona bankruptcy court's standard Petition Preparer fee of $200, and the $200 standard fee had been in place during the intervening 14 years. *Thueson* set out to consider whether circumstances had changed to the point where the $200 standard fee was no longer reasonable. In essence, *Thueson* determined that, due to inflation, the benchmark hourly rate needed to rise from $16.82 to $23.00, but that the increased hourly rate was more than offset by a decrease in the amount of time it took to type the forms for a standard bankruptcy filing. 2009 WL 1076888, at *14–15. *Thueson* recounted the three days of testimony it had heard in the seventeen Petition Preparer fee cases it had consolidated for hearing. *Id.* at *1–7. The evidence tended to show that the average amount of labor it took to prepare a standard bankruptcy filing was roughly five hours. *Id.* at *14. According to *Thueson,* even though this evidence might have supported the setting of a new standard Petition Preparer fee of less than $200, *Thueson* ultimately decided to leave the standard $200 fee in place. *Id.* at *16.

### 5. Plotnick's arguments on appeal.

We will now turn our attention to Plotnick's legal arguments on appeal and why none of them justify reversal of the bankruptcy court's order. Plotnick essentially makes the same arguments on appeal that

---

10. Even if we were to credit Plotnick's unsubstantiated statements as evidence, she still did not establish the reasonableness of her $250 fee. This will become clear from our discussion of her arguments, *infra.*

she made to the bankruptcy court. Plotnick primarily complained that the court's $200 standard fee was "outdated," "unreasonably low," and did "not bear a rational relationship to the cost of obtaining similar services from an attorney." Appellant's Opening Brief (November 8, 2010), at p. 4. We will consider each of these contentions in turn, but first we will address Plotnick's contention that the manner in which the hearing was held violated her due process rights.

Plotnick did not assert in either the bankruptcy court or in her appeal brief that she had been denied due process. However, at oral argument before us, she suggested that the bankruptcy court did not give her the opportunity to tell her side of the story, essentially a claim that she had been denied due process of law.

■■■ In bankruptcy cases, adequate notice and adequate opportunity for hearing generally are flexible concepts that depend upon the circumstances of the particular case. *See* § 102(1)(A).[11] This flexible approach to determining adequate notice and opportunity for hearing is consistent with the dictates of due process:

> [a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance.

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citations omitted); *see also Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing."). In other words, we must determine whether the notice and opportunity for hearing given to Plotnick was "reasonably calculated" to give her a meaningful opportunity to respond to the OSC.

■■■ Here, the bankruptcy court issued its OSC on July 7, 2010, 26 days before the August 2, 2010 hearing on the OSC. Plotnick submitted her written response to the OSC 21 days after issuance of the OSC, and Plotnick appeared at the August 2, 2010 hearing and argued on her own behalf. At no time did Plotnick ask for a continuance of the August 2, 2010 hearing.

During oral argument before us, Plotnick intimated that the bankruptcy court did not really give her a chance to argue, but the transcript from the August 2, 2010 hearing tells a different story. The hearing transcript reflects that the court and Plotnick engaged in a lengthy colloquy during which Plotnick reiterated most of

---

11. Section 102(1) provides:

(1) "after notice and a hearing", or a similar phrase—
    (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—
(i) such a hearing is not requested timely by a party in interest; or
(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act. . . .

the same points that she made in her written response. Tellingly, her appellate brief did not assert any new or different arguments.

Moreover, as stated before, the record establishes that Plotnick never attempted to submit evidence, nor did she request an evidentiary hearing. The local bankruptcy rules for the District of Arizona contain a procedure for making a request for an evidentiary hearing. Bankr. D. Ariz. Local R. 9014–2(a) provides that hearings scheduled in contested matters, such as a hearing on a disputed fee, "will be conducted without live testimony except as otherwise ordered by the court." Local R. 9014–2(b) provides that a party may request an evidentiary hearing by submission of a separate motion, detailing the time required for receipt of evidence, when the parties will be ready to present the evidence, time required for discovery, and whether a Rule 7016 scheduling conference is required.[12]

In this case, Plotnick did not file any written request for an evidentiary hearing. In fact, she never even suggested that one was necessary. In light of all of the above circumstances, we cannot perceive any violation to Plotnick's due process rights.

■ Plotnick also argued that the $200 standard fee is outdated. It apparently is true that the court has used the same standard fee for roughly fifteen years, but *Thueson* demonstrates that the court methodically considered the continued propriety of the $200 standard fee less than two years ago and, after hearing three days of testimony and taking into account the effects of inflation, determined that the $200 standard fee still was appropriate. Bankruptcy courts are given broad discretion in setting presumptively-reasonable fees, *see Agyekum*, 225 B.R. at 699, and Plotnick has not established either (1) how the bankruptcy court abused its discretion in setting its presumptively-reasonable fee, or (2) how she has been harmed by the presumptively-reasonable fee.

Plotnick's arguments against and references to the $200 standard fee reflect a misunderstanding as to how the standard fee works. Plotnick at times referred to the standard fee as a cap or as the maximum fee that a Petition Preparer can receive, but that simply is not so. As a presumptively-reasonable fee, the standard fee does not preclude Plotnick or any other Petition Preparer from claiming and proving entitlement to a higher fee. *See Eliapo*, 468 F.3d at 601; *Agyekum*, 225 B.R. at 699.

In fact, the bankruptcy court's application here of its $200 standard fee (and its $23 standard hourly rate) worked more like a floor than a ceiling. The bankruptcy

**12.** The relevant portion of Bankr. D. Ariz. Local R. 9014–2 states:

(a) Initial Hearing without Live Testimony. Pursuant to Bankruptcy Rule 9014(e), all hearings scheduled on contested matters will be conducted without live testimony except as otherwise ordered by the court. If, at such hearing, the court determines that there is a material factual dispute, the court will schedule a continued hearing at which live testimony will be admitted.

(b) Request for Live Testimony.

(1) Any party filing a motion, application, or objection who reasonably anticipates that its resolution will require live testimony may file an accompanying motion for an evidentiary hearing, stating:

(A) The estimated time required for receipt of all evidence, including live testimony;

(B) When the parties will be ready to present such evidence;

(C) The estimated time required to complete all formal and informal discovery;

(D) Whether a Bankruptcy Rule 7016 Scheduling Conference should be held; and,

(E) Whether any party who may participate at the evidentiary hearing is appearing pro se.

court accepted at face value that the entire 8.4 hours Plotnick claimed for helping Hill was compensable under § 110, but lacking any evidence demonstrating the value *to the debtor* of Plotnick's time, the bankruptcy court utilized its $23 hourly rate from *Thueson.* When it multiplied the 8.4 hours by the $23 hourly rate, the bankruptcy court determined that Plotnick still was better off with the $200 standard fee, and that is what the bankruptcy court allowed Plotnick to keep.[13]

Plotnick next argued that the $200 standard fee is unreasonably low in light of the costs and cost increases that she has incurred in providing her services. She states that her annual costs have increased by as much as $1000 over the last several years, while the standard Petition Preparer fee has remained unchanged, and that the standard fee should rise to allow her to recoup at least part of these additional costs when she serves as a Petition Preparer.

■■■ However, as *Thueson* pointed out, Congress has charged us with protecting debtors from excessive fees and has not charged us with ensuring a particular rate of return for Petition Preparer services. Indeed, we considered and rejected a similar argument regarding Petition Preparer costs in *Agyekum,* 225 B.R. at 700. Simply put, Plotnick did not need to establish what it cost her to provide Petition Preparer services, but rather what those services objectively were worth to Hill as a debtor.

■■■ Plotnick further argued that the standard fee should bear some rational relationship to fees attorneys and/or law firm paralegals charge for their bankrupt-

cy filing services. We, again, disagree. We perceive little nexus between the typing services that § 110 allows and the package of obligations and protections that, by law, necessarily accompany bankruptcy filings undertaken by attorneys and their paralegals. Put another way, whenever an attorney or an attorney's paralegal files a bankruptcy petition for a client, a host of legal, ethical, fiduciary and professional obligations apply to that attorney-client relationship—obligations that a Petition Preparer, as a mere typist, simply does not bear. In short, Plotnick has not established any factual basis for linking Petition Preparer compensation to attorney or law firm paralegal compensation.

Plotnick's appeal brief raised several other concerns. Plotnick contended that it was unfair for the court to sua sponte question the reasonableness of her Petition Preparer fee. To the extent Plotnick is questioning the court's authority, § 110 expressly provides that the court on its own initiative may raise the issue of the reasonableness of the Petition Preparer fee. *See* § 110(h)(4).[14] To the extent Plotnick was attempting to raise a due process issue, as we already determined above, we perceive none here. The court raised the fee question by issuing its OSC. Plotnick filed a response to the OSC and appeared and argued on her own behalf at a noticed hearing on the OSC. At no time did Plotnick ever express a desire for a continued or additional hearing, or for additional time to collect and present evidence. Under these circumstances, we simply see no grounds to support a due process claim. *See BPP,* 307 B.R. at 143–44 (rejecting

---

13. It likely would have been inappropriate for the court to have allowed anything less than $200 here. The OSC merely raised the issue of whether Plotnick should disgorge anything in excess of $200. Thus, Plotnick's due process rights arguably would have been impli-

cated if the bankruptcy court ultimately had required Plotnick to disgorge more than $50 of her $250 fee.

14. *See also* note 8, *supra.*

due process claim under similar circumstances).[15]

■ Finally, Plotnick complained that the standard fee did not take into account her CLDP status and her excellent credentials. No one disputes that Plotnick's bankruptcy law background makes her an excellent candidate to serve as a Petition Preparer. However, § 110 in essence precludes allowance of greater compensation based on superior credentials. *Doser II* explained why this is so:

> [I]t must be remembered, that other than ensuring that the information provided by the customer is properly transcribed onto correct forms, the BPP plays no additional compensable role in the process of the customer's filing for bankruptcy.

*Doser II*, 281 B.R. at 315.[16]

Plotnick's (and her colleagues') frustration is palpable with a system that generally requires all legal work to be performed by licensed attorneys. She obviously and sincerely believes that CLDPs like her are competent to provide services to debtors at a more sophisticated level than § 110 seems to allow. But we must interpret the laws as they are written, and not as Plotnick believes they should be. *See Bush,* 275 B.R. at 77. If Plotnick and her colleagues desire to change the existing system, they must seek that change from Congress and not the courts.

## CONCLUSION

For the reasons set forth above, the order of the bankruptcy court is AFFIRMED.

---

**15.** Plotnick also asserted that the court's $200 standard fee has not been recently posted or published by either the U.S. Trustee or by the court. We are unclear as to the legal point raised by this assertion, even if it had been supported by admissible evidence. Even if we assume that the fee policy has not been recently posted or published, Plotnick admitted in her papers and in court that she has long been aware of the standard fee. Consequently, the asserted absence of recent posting or publication of the standard fee policy does not suggest any grounds for reversal of the order on appeal.

**16.** Plotnick pointed out that, by way of Bankr. D. Ariz. Local R. 2090–2(a), the Arizona bankruptcy court requires that all Petition Preparers qualify as CLDPs before they can help prepare bankruptcy papers for filing. Plotnick argues that, if Arizona Petition Preparers must be CLDPs, then her CLDP status must add value to her Petition Preparer services. However, nothing that Plotnick has provided in the record quantifies the value of her CLDP status when she acts as a Petition Preparer. Without such quantification, she has not established her entitlement to a larger fee.