FILED

JUL 09 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   AZ-12-1297-TaAhJu |
| | ) | |
| HOWARD FLETCHER THRUSTON, | ) | Bk. No.   10-27593-RTB |
| | ) | |
| Debtor. | ) | Adv. No. 10-02156-RTB |
| _____ | ) | |
| | ) | |
| HOWARD FLETCHER THRUSTON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| DAVID M. REAVES, Chapter 7 | ) | |
| Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on June 21, 2013
at Phoenix, Arizona

Filed - July 9, 2013

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Redfield T. Baum, Sr., Bankruptcy Judge, Presiding

Appearances:    Howard Fletcher Thruston, appellant, argued pro
                se; Misty W. Weigle of Reaves Law Group argued for
                appellee David M. Reaves, Chapter 7 Trustee.

Before:  TAYLOR, AHART,[**] and JURY, Bankruptcy Judges.

_____

    [*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

    [**] The Honorable Alan M. Ahart, Bankruptcy Judge for the
Central District of California, sitting by designation.

**INTRODUCTION**

David M. Reaves, chapter 7 trustee ("Trustee"), moved for summary judgment ("MSJ") on his adversary complaint objecting to the discharge of Howard Fletcher Thruston ("Debtor") pursuant to § 727(a)(2), (a)(3), and (a)(4).[1] The bankruptcy court granted the MSJ and subsequently entered a judgment denying the Debtor's discharge. The Debtor appeals *pro se* from that judgment. We VACATE the summary judgment order and judgment and REMAND to the bankruptcy court for further proceedings consistent with this memorandum.

**FACTS**

The Debtor is married to Morgen Thruston ("Mrs. Thruston") and has been since at least 1986. During the course of their marriage (and prior to the petition date), Mrs. Thruston acquired title to various real properties in Iowa and Arizona (the "Iowa Property," the "Citrus Property," the "Northridge Property", and the "Wagon Wheel Property") (collectively hereafter, the "Properties"). On the petition date, Mrs. Thruston also owned a 2008 Hummer, leased a 2007 GMC truck, and possessed a 100% membership interest in Rosemont, LLC. In turn, Rosemont, LLC separately owned commercial real property in Arizona. Finally, the Debtor and Mrs. Thruston are or were the sole officers of Dynasty Homes, Inc. ("Dynasty Homes").

On August 30, 2010, the Debtor filed a skeletal chapter 7 bankruptcy petition; he did not file schedules or a statement of financial affairs ("SOFA"). Mrs. Thruston did not join in the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Debtor's bankruptcy petition.

Following extensions of the time to file the requisite documents, the Debtor filed his schedules and SOFA in October of 2010. His schedules were essentially blank; the Debtor listed one checking account, a real estate license, and a contractor's license on his Schedule B. On his Schedule I, he indicated that he was a self-employed real estate broker/general contractor in Dynasty Homes and that his wife was a homemaker. The Debtor disclosed Dynasty Homes on his SOFA, but erroneously listed himself as "President" (and his wife with a "?" next to her name) in response to Item 21. He also attached a list of 12 lawsuits, in which he identified the name of the opposing party, the case number, the name of the court, and the nature of the lawsuit. The Debtor, however, did not schedule any real properties, vehicles, or creditors. In executing his Declaration Concerning Debtor's Schedules, the Debtor typed "[i]ncomplete-need help" next to his signature.

The Trustee filed an adversary complaint objecting to the Debtor's discharge under § 727(a)(2), (a)(3), and (a)(4). The complaint alleged that the Debtor failed to disclose significant assets held by Mrs. Thruston and to provide a number of items of information, including bank statements, tax returns, and real property deeds.

The Debtor subsequently amended[2] his schedules and SOFA; he disclosed a few more personal property assets, identified

---

[2] This was not based on the Debtor's own volition, but rather, in response to the bankruptcy court's express instruction to the Debtor at a hearing.

- 3 -

Mrs. Thruston as a codebtor, added numerous creditors to his Schedule F, and listed a few executory contracts. But his schedules A, C, D, and E remained blank.

Nine months after filing the adversary complaint objecting to discharge, the Trustee moved for summary judgment. He stated that as of the date of petition, the Debtor or Mrs. Thruston owned the Properties and that Mrs. Thruston possessed an interest in Rosemont, LLC, the Wagon Wheel Property, and both vehicles. Consequently, the Debtor possessed a community property interest in all of these properties but failed to disclose the assets on his schedules or SOFA. He also asserted that Mrs. Thruston transferred her membership interest in Rosemont, LLC postpetition without authorization from the bankruptcy court and that her membership interest was extremely valuable.

The Trustee pointed out that during the pendency of the Debtor's bankruptcy case, secured creditors moved for relief from the automatic stay as to the Properties. In each instance, the Debtor opposed the stay relief motion and asserted an interest in the property at issue. He also pointed out that Mrs. Thruston, Dynasty Homes, and Rosemont, LLC all filed for bankruptcy relief after Debtor initiated his bankruptcy case. The Trustee asserted that those bankruptcy cases were plagued by the same maladies as the Debtor's bankruptcy case: a bare bones petition, no initial schedules or SOFA's, and a litany of emergency motions in lieu of responsive documents. As such, the Trustee argued that the Debtor concealed or transferred property of the estate, concealed records relating to his financial condition and business transactions, and knowingly and fraudulently omitted assets from

- 4 -

his schedules and SOFA.[3]

In support of the MSJ, the Trustee submitted a statement of facts, a number of exhibits, and his affidavit. Among other things, the exhibits included deeds related to the various real properties. These deeds evidenced title in the name of Mr. Thruston. At least one exhibit was a disclaimer deed wherein Mr. Thruston affirmatively disavowed any interest in the Wagon Wheel Property.

Rather than respond to the MSJ, the Debtor instead filed an emergency motion to extend the response deadline, which the bankruptcy court granted.

The Debtor subsequently submitted his response to the MSJ and attached several exhibits; but he did not file a declaration or affidavit. First, he contested the assertion that he never scheduled his creditors, stating that he submitted a list of creditors one week after filing his bankruptcy petition. He also contested the assertion that he hid or concealed assets, arguing that the real and personal properties identified by the Trustee were Mrs. Thruston's sole and separate property. The Debtor argued that, in any event, the banks foreclosed on the Citrus Property and Northridge Property approximately eight months prior to the petition date. In support of this assertion, he attached two trustee's deeds of sales with respect to those properties. The Debtor further argued that Mrs. Thruston sold the Wagon Wheel Property and that the remaining properties lacked equity.

---

[3] The Trustee also objected to discharge under § 523(a)(3)(B). That basis was not expressly included in the Judgment and neither party discusses it on appeal. Thus, we do not consider it.

In reply, the Trustee reiterated that the Debtor was required to disclose all assets. The Trustee maintained that, notwithstanding the prepetition foreclosures, the Debtor affirmatively asserted interests in the Citrus and Northridge properties when he opposed the stay relief motions. He also reiterated that regardless of title, the community property presumption applied to the properties and, thus, that the Debtor concealed property of the estate by failing to properly disclose the various assets held by Mrs. Thruston. Finally, the Trustee maintained that whether the properties contained equity or whether creditors were injured by the Debtor's nondisclosure was irrelevant given the Debtor's obligations and duties under the Bankruptcy Code.

The parties presented arguments to the bankruptcy court on March 22, 2012. The Trustee argued that the pattern of delay and nonfeasance in the Debtor's bankruptcy case – in conjunction with the bankruptcy cases of Mrs. Thruston and their related entities – demonstrated an abuse of the bankruptcy system that precluded discharge. He also called attention to the fact that, even if the Debtor executed disclaimer deeds on the real properties, no such deeds existed with respect to the membership interest in Rosemont, LLC or the vehicles.

The Debtor relied, in part, on his *pro se* status. He emphatically argued that he disclosed everything required of him and contested that he concealed or acted to defraud anyone. The Debtor conceded, however, that he and his wife continued to reside in the Northridge Property. At the conclusion of arguments, the bankruptcy court took the matter under submission.

The bankruptcy court subsequently entered a minute entry/order ("SJ Order") granting the MSJ. It determined that the Debtor asserted interests in the Properties in his objections to the stay relief motions. Based on that and the Debtor's failure to disclose other assets, the bankruptcy court determined that the Debtor concealed and failed to disclose significant assets within one year from filing bankruptcy. It also found that the Debtor made a false oath as to real and personal properties. The bankruptcy court, however, made no express findings as to the Debtor's state of mind and made no reference to the § 727(a)(3) claim.

The Debtor next filed an emergency motion for reconsideration on the SJ Order. Before the bankruptcy court ruled on the Debtor's emergency motion, however, it entered a judgment ("Judgment") denying the Debtor's discharge under § 727(a)(2), (a)(3), and (a)(4). The Debtor timely filed his notice of appeal.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(J). If the judgment is final, then we have jurisdiction under 28 U.S.C. § 158(b).

Because the Debtor filed his notice of appeal after moving for reconsideration, the BAP Clerk issued an order requiring clarification regarding jurisdiction. The order provided that the motion for reconsideration tolled the time to appeal until entry of an order disposing of that motion. The order, thus, directed that the Debtor respond and provide a copy of the order from the bankruptcy court ruling on his motion for

- 7 -

reconsideration or explain the steps taken to obtain an order. The Debtor responded and provided a minute entry/order from the bankruptcy court denying the Debtor's motion for reconsideration. Therefore, we have jurisdiction over this appeal.

**ISSUE**[4]

Did the bankruptcy court err in denying the Debtor's discharge under § 727(a) when it granted summary judgment in favor of the Trustee?

**STANDARD OF REVIEW**

In an action for denial of discharge, we review: (1) the bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) its application of the facts to those rules requiring the exercise of judgments about values animating the rules de novo. Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004) (citation omitted), aff'd, 212 Fed. Appx. 589 (9th Cir. 2006).

We review an order granting summary judgment de novo, and, thus, we are bound by the same principles as the bankruptcy court. Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011), aff'd, 708 F.3d 1123 (9th Cir. 2013).

---

[4] We do not address other issues identified by the Debtor on appeal, such as whether the Trustee committed fraud and perjury during the course of the proceedings; whether the bankruptcy court erred in permitting the Trustee to retain his own law firm as counsel; whether the bankruptcy court showed "substantial favoritism" to the Trustee; or whether the bankruptcy court permitted violations of the Debtor's constitutional rights. These issues were not raised before the bankruptcy court, not properly raised or addressed in the Debtor's opening brief, or simply lack a cognizable legal basis.

**DISCUSSION**

On appeal, the Debtor argues that the bankruptcy court erred in granting the MSJ and, consequently, in denying his chapter 7 discharge.[5] Based on the Debtor's *pro se* status – both before the bankruptcy court and on appeal – we liberally construe his pleadings and other documents. See <u>Nilsen v. Neilson (In re Cedar Funding, Inc.)</u>, 419 B.R. 807, 816 (9th Cir. BAP 2009).

In general, the bankruptcy court must grant a discharge to an individual chapter 7 debtor unless one of the twelve enumerated grounds in § 727(a) is satisfied. In the spirit of the "fresh start" principles that the Bankruptcy Code embodies, claims for denial of discharge are liberally construed in favor of the debtor and against the objector to discharge. <u>Khalil v. Developers Sur. & Indem. Co. (In re Khalil)</u>, 379 B.R. 163, 172 (9th Cir. BAP 2007), <u>aff'd</u>, 578 F.3d 1167 (9th Cir. 2009). The objector to discharge, thus, bears the burden to prove by a preponderance of the evidence that the debtor's discharge should be denied under an enumerated ground of § 727(a). <u>Id.</u>

Summary judgment is appropriate when there is no genuine dispute of material fact, and, when viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56 (incorporated into adversary proceedings by Fed. R. Bankr. P. 7056); <u>Celotex</u>

---

[5] The Debtor spends a significant amount of his opening brief discussing his lengthy litigation with National Bank of Arizona and includes documents related to that litigation in his excerpts of record. While that litigation is clearly important to the Debtor, it bears little to no relevance to the present appeal, and, therefore, we do not address it in this memorandum.

- 9 -

Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Substantive law governs the materiality of a fact; thus, a fact is material if, under applicable substantive law, it may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All justifiable inferences are to be drawn in favor of the non-moving party. Id. at 255.

The movant must first identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva), 550 F.3d 755, 761 (9th Cir. 2008) (citing Celotex Corp., 477 U.S. at 323)). Once the movant meets its burden, the burden shifts to the non-moving party to "set out specific facts showing a genuine issue for trial." Id. (citing Fed R. Civ. P. 56(e)(2)).

The non-moving party, however, cannot rest on mere allegations or denials in his or her pleadings. Rather, the non-moving party must present admissible evidence showing that there is a genuine dispute for trial. Fed. R. Civ. P. 56(e). As such, "[b]riefs and oral argument do not constitute evidence." In re Hill, 450 B.R. 885, 892 (9th Cir. BAP 2011); see also British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978) ("[L]egal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion"). It is error, however, to grant summary judgment simply because the opponent failed to oppose. N. Slope Borough v. Rogstad (In re Rogstad), 126 F.3d

- 10 -

1224, 1227 (9th Cir. 1997). Again, the movant must meet its initial burden as to all elements of the cause of action.

Here, in order to establish that he was entitled to summary judgment, the Trustee needed to show that there were no material factual disputes regarding the denial of the Debtor's discharge under § 727(a)(2), (a)(3), or (a)(4). We first address § 727(a)(3).

### Section 727(a)(3)

Section 727(a)(3) provides that denial of discharge is warranted where, among other things, the debtor concealed or falsified recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained.

The objector to discharge states its prima facie case under § 727(a)(3) by showing: (1) that the debtor failed to maintain and preserve adequate records; and (2) that this failure rendered it impossible to ascertain the debtor's financial condition and material business transactions. In re Caneva, 550 F.3d at 761 (citation and quotation marks omitted). Once the objector shows inadequate or nonexistent records, the burden shifts to the debtor to justify the inadequacy or nonexistence. Id. (citation and quotation marks omitted).

Here, the Trustee argued that the Debtor's multiple delays in filing schedules and SOFA's in his bankruptcy case and in the bankruptcy cases of Mrs. Thruston and related entities was tantamount to concealing information regarding the Debtor's financial condition and business transactions. In the adversary complaint, however, the Trustee asserted that the Debtor failed

- 11 -

to provide information relating to real properties, bank accounts, and tax returns.

In connection with the MSJ, the bankruptcy court made no findings as to inadequate or nonexistent documents. With one exception,[6] the record is devoid of a discussion of specific allegedly inadequate or nonexistent documents. Aside from the adversary complaint, the Trustee did not further advance a clear theory or supportive evidence that the Debtor concealed or failed to maintain records or documents.

When prompted at oral argument to articulate the basis for his § 727(a)(3) claim, the Trustee could not specifically identify any documents or records that the Debtor allegedly failed to maintain other than the Debtor's failure to timely file his schedules and SOFA. Then, when prompted for case authority that supported this proposition, the Trustee cited <u>Retz v. Sampson (In re Retz)</u>, 606 F.3d 1189, 1197 (9th Cir. 2010).

It is true that, after several extensions, the Debtor filed his initial schedules and SOFA one day late. But it is also true that the bankruptcy court granted the Debtor's requests for extensions of the time to file his requisite documents. The Trustee's dependance on these extensions is, thus, improper.

The Trustee's reliance on <u>In re Retz</u> is also misplaced. In <u>Retz</u>, the bankruptcy court found that the debtor's schedules and SOFA contained a number of significant inaccuracies and

---

[6] The record shows that at a hearing in the adversary proceeding on September 20, 2011, there was a colloquy in regards to bank statements. In particular, the Trustee stated that he was unwilling to agree that the Debtor had, in fact, produced all relevant bank statements.

omissions. Id. This determination, however, was made in the context of an action under § 727(a)(4) and (a)(5), see id. at 1197-1200, 1205-06, and not in connection with a § 727(a)(3) cause of action. In fact, the opinion contains no reference to § 727(a)(3). Contrary to the Trustee's assertion, a debtor's schedules and/or SOFA are not the types of records contemplated by § 727(a)(3). See Depue v. Cox (In re Cox), 462 B.R. 746, 762 (Bankr. D. Idaho 2011) (debtor's failure to properly complete his or her schedules or SOFA does not address the inquiry required under § 727(a)(3)); see also Berger & Assocs. Att'ys, P.C. v. Kran (In re Kran), --- B.R. ----, 2013 WL 1809768, at *5-6 (S.D.N.Y. Apr. 30, 2013) (Section 727(a)(3) "extends to only certain types of record-keeping deficits, and only back to a reasonable period past to present.") (citation and quotation marks omitted).

In sum, we reject the Trustee's argument that the Debtor's schedules or SOFA, in and of themselves, constituted inadequate recorded information for the purposes of § 727(a)(3). The Trustee does not otherwise sufficiently identify records that the Debtor allegedly failed to maintain or produce. Nor does the Trustee articulate how the Debtor failed to meet the disclosure standard set forth in In re Caneva, as discussed above. We cannot clearly ascertain this information from the record. As such, the Trustee did not meet his burden of showing that the Debtor failed to maintain or preserve adequate records pursuant to § 727(a)(3) at summary judgment. Therefore, we reverse and remand as to the § 727(a)(3) claim.

- 13 -

**Sections 727(a)(2) and (a)(4)**

Section 727(a)(2) provides that denial of discharge is warranted where the debtor disposed of or permitted the disposal of his or her property, with the intent to hinder, delay, or defraud a creditor or an officer of the estate, within the applicable statutory period. Section 727(a)(4) provides that denial of discharge is warranted where, among other things: (1) the debtor made a false oath in connection with the bankruptcy case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently. In re Retz, 606 F.3d at 1197 (citation omitted).

A necessary element of an action under either § 727(a)(2) or (a)(4) is the debtor's intent; the objector to discharge must show that a debtor harbored a subjective intent to hinder, delay, or defraud a creditor or trustee under § 727(a)(2) or a fraudulent intent under § 727(a)(4). Intent is a factual question that requires the bankruptcy court "to delve into the mind of the debtor and may be inferred from surrounding circumstances . . . [or a debtor's] course of conduct . . . ." In re Searles, 317 B.R. at 379. Nonetheless, "[s]ummary judgment is ordinarily not appropriate in a § 727 action where there is an issue of intent," Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 65 (9th Cir. BAP 1999), since summary judgment is based on the evidence before the court, without determination as to the weight of evidence or credibility of witnesses. See Anderson, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine

- 14 -

whether there is a genuine [dispute] for trial.").

Under § 541, commencement of a bankruptcy case creates an estate comprised of all the debtor's legal or equitable interests in property. 11 U.S.C. § 541(a)(1). This includes "[a]ll interests of the debtor and the debtor's spouse in **community property**," either under the debtor's sole, equal, or joint management and control, or liable on an allowable claim against the debtor. Id. § 541(a)(2) (emphasis added). Arizona is a community property state; consequently, a presumption of community property arises as to property acquired during marriage **regardless of the form of title**. See A.R.S. § 25-211(a); Carroll v. Lee, 148 Ariz. 10, 16 (1986) (presumption of community property "applies to property acquired during marriage **even though title is taken in the name of only one spouse**.") (emphasis added).

Because the Debtor and his wife live in Arizona, the presumption of community property *automatically* arises as to all property and assets acquired during their marriage, even those solely titled in Mrs. Thruston's name. See A.R.S. § 25-211(a); Carroll, 148 Ariz. at 16. To the extent the Debtor possessed a community property interest in those assets, in turn, those interests became property of his bankruptcy estate as of the petition date. The Trustee's case under § 727(a)(2) and (a)(4) is based on the community property presumption and the argument that the Debtor was required to disclose all such interests.

The Debtor vociferously protested against the assertion that he acted with obstructive or fraudulent intent and that he was

required to include his wife's separate property.[7] Like many *pro se* debtors, however, the Debtor made the mistake of not responding to the MSJ with evidence by way of, at a minimum, an affidavit or a declaration made under the penalty of perjury. This is typically fatal to a nonmoving party in showing that a genuine and material factual dispute exists for trial. <u>See generally</u> <u>In re Hill</u>, 450 B.R. at 892; <u>British Airways Bd.</u>, 585 F.2d at 952. Even so, the failure to properly respond does not automatically result in summary judgment for the movant. <u>See</u> 2010 Amendments, Fed. R. Civ. P. 56(e) ("[S]ummary judgment cannot be granted by default even if there is a complete failure to respond to the motion, much less when an attempted response fails to comply with [Civil] Rule 56(c) requirements.").

In other words, there can be no default summary judgment. <u>Id.</u> A court thereby errs when it grants summary judgment simply because the non-movant failed to properly respond. <u>See</u> <u>In re Rogstad</u>, 126 F.3d at 1227. As discussed further below, here, we conclude that based on the Debtor's *pro se* status, the bankruptcy court's failure to make specific findings as to the Debtor's intent, and the particular circumstantial evidence in this case, the Debtor's failure to advance evidence in response to the MSJ was not fatal.

The record contains no evidence showing that the Debtor admitted to acting with obstructive or fraudulent intent. Thus,

---

[7] At oral argument, the Debtor asserted that he received some form of legal assistance from an attorney through his church. The Debtor, however, never provided evidence in connection to this representation. Thus, to the extent he attempts to advance good faith reliance on the advice of counsel, we decline to consider the argument on appeal.

determining whether such intent exists is dependant on circumstantial evidence. The Trustee relied on several cases in support of his argument as to the inference of intent under § 727(a)(4). Only one of those cases, <u>Sholdra v. Chilmark Financial LLP (In re Sholdra)</u>, 249 F.3d 380, 383 (5th Cir. 2001), however, involved a summary judgment. And <u>In re Sholdra</u> is distinguishable. There the debtor did not admit intent, but admitted to a knowing failure to schedule significant assets. <u>Id.</u> at 382. Here, in contrast, the Debtor consistently defended his failure to list what he characterized as his wife's assets.

On this record – and viewing all the facts and evidence in the light most favorable to the Debtor, as we must on summary judgment – there remains a genuine dispute as to whether the Debtor acted with the requisite state of mind under § 727(a)(2) or (a)(4) necessary to deny his discharge.

There is no serious dispute that the Debtor failed to schedule or disclose the assets identified by the Trustee. The pertinent inquiry here, however, is whether he did so with the requisite intent under § 727(a)(2) or (a)(4). While the record certainly raises questions, it is far from dispositive as to the issue of intent with respect to all of the allegedly undisclosed assets identified by the Trustee and expressly relied upon by the bankruptcy court. The failure of the bankruptcy court to make findings in this area complicates the issue.

The Debtor argued that he was not required to disclose the assets at issue because these assets were his wife's sole and separate property. In particular, he argued that he executed "disclaimer deeds" on the real properties acquired during the

- 17 -

marriage and titled in Mrs. Thruston's name. In Arizona, a party may rebut the presumption of community property by establishing, among other things, that one spouse executed a disclaimer deed, which disclaims all interests, claims, and rights to real property. See Bell-Kilbourn v. Bell-Kilbourn, 216 Ariz. 521, 524 (Ariz. Ct. App. 2007) (disclaimer deed is a contract between the parties and such evidence rebuts the community property presumption).

The Debtor's argument alone could be insufficient to rebut an inference of improper intent given the Trustee's prima facie showing of the Debtor's nondisclosure and the circumstantial evidence. See In re Wills, 243 B.R. at 65 (denial of summary judgment demands "credible evidence **beyond mere self-serving statements of intent** which creates a genuine issue of material fact" as to whether a debtor acted with the requisite intent) (emphasis added). Our review of the record, however, shows that one of the Trustee's own MSJ exhibits included a copy of a disclaimer deed to the Wagon Wheel Property. The disclaimer deed rebutted the presumption of community property as to that property, and, thus, the Debtor was not clearly required to schedule the Wagon Wheel Property. Further review of the record also shows that at the Citrus Property stay relief hearing, the secured creditor asserted that the Debtor executed a disclaimer deed with respect to that property, and, thus, that the Citrus Property was Mrs. Thruston's sole and separate property. This evidence goes beyond self-serving statements and creates ambiguity as to whether the Debtor actually executed disclaimer deeds on the other real properties or similar agreements as to

other assets.  And, ultimately, it goes to the Debtor's state of mind in failing to disclose his wife's assets.

The Debtor also provided evidence that two of the allegedly undisclosed real properties – the Citrus Property and the Northridge Property – were foreclosed on prepetition.  Our review of the record additionally shows that, in seeking stay relief, the secured creditor movants attached copies of trustee's deeds with respect to the same properties in support of requested relief.  These prepetition foreclosure sales extinguished any ownership interest that Mrs. Thruston or the Debtor (either directly or as community property) had therein.  See A.R.S. § 33-811(c) (unless trustor obtains an injunction prior to a scheduled trustee's sale, the trustor waives all defenses and objections to the sale); id. at § 33-811(e) (trustee's deed of sale conveys the trustor's title, interest and claims in the subject property to the purchaser without right of redemption).  Essentially, the Debtor was a squatter in the Northridge Property.  A failure to schedule such an alleged interest does not form an unambiguous basis for the inference of obstructive or fraudulent intent.

And while the Debtor never directly scheduled the disputed real properties, the Debtor identified litigation related to the Properties on his SOFA; his disclosure identified pending litigation and indicated that the actions related to "forcible detainer judgment," "deficiency action," and "foreclosure."  Again, while improperly disclosed, this is inconsistent with a determination of intentional concealment.  Here, the combination of the oblique reference to the Properties through the listing of

- 19 -

the litigation coupled with the disclaimer deed as to the Wagon Wheel Property provides circumstantial evidence that is inconsistent with an assertion of improper intent in connection with his failure to schedule the real properties. In short, on this record, it is far from clear that the Debtor acted with the intent to defraud, conceal, hinder, or delay disclosure of the real property assets.[8]

Perhaps acknowledging the quandary arising in relation to the real properties, the Trustee also contended that the Debtor nevertheless failed to disclose his wife's membership interest in Rosemont, LLC and the vehicles. Again, given the evidence of disclaimer deeds as to other property and making all inferences in favor of the Debtor as we must at summary judgment, wrongful intent cannot be inferred solely on this basis. The fact that one of the vehicles is leased only by Mrs. Thruston - a fact that could create a question in the mind of even a sophisticated debtor - further supports the conclusion that the failure to schedule these assets does not provide sufficient unambiguous evidence of wrongful intent.

And while we do not suggest that the Debtor's acknowledgment of the incompleteness of the schedules and SOFA on the face of the document is sufficient to avoid a finding of wrongful intent even at summary judgment, it is another factor that balances against summary judgment as to intent.

Finally, the Trustee relied on activity in the bankruptcy

---

[8] Moreover, it appears that some of the allegedly undisclosed assets were scheduled and disclosed in the other bankruptcy cases.

cases of Rosemont, LLC and Mrs. Thruston to support his assertion of wrongful intent. But the fact that these entities filed and submitted assets directly to the jurisdiction of the bankruptcy courts could be viewed as favorable to the Debtor, at least as to his state of mind. Again, at summary judgment, we are not free to weigh the evidence against the Debtor where there are two legitimate ways to view the evidence. At oral argument, the Trustee argued that, in particular, Mrs. Thruston's postpetition transfer of her interest in Rosemont, LLC (on the same day that Rosemont filed a petition) evidenced the Debtor's obstructive or fraudulent intent. To use this evidence against the Debtor, however, requires us to make assumptions disfavorable to the Debtor and ignores the fact that according to the record the value of that entity was solely in real property concurrently submitted to the jurisdiction of a bankruptcy court; fraudulent intent is not unambiguously clear based on this transaction.

To be clear, we do not hold that the Debtor prevailed on the adversary complaint or determine that he is entitled to his bankruptcy discharge. Nor do we purport to establish that a debtor may use his or her *pro se* status as a shield to nefarious conduct. As stated, the record contains facts supportive of an abusive filing. The record also shows that the bankruptcy court repeatedly advised the Debtor to seek the assistance of counsel and provided him information regarding free or low cost bankruptcy legal services. The Trustee ultimately may prove that the Debtor is not entitled to a bankruptcy discharge based on the totality of the circumstantial evidence. Of course, the bankruptcy court enjoys substantial discretion in weighing

- 21 -

evidence and making determinations as to credibility *at trial*.

But on this record and in the context of a summary judgment, there remains a genuine dispute as to whether the Debtor acted with the intent necessary for denial of his chapter 7 discharge under § 727(a)(2) or (a)(4).

## CONCLUSION

Based on the foregoing, we VACATE the SJ Order and Judgment, and REMAND to the bankruptcy court for further proceedings consistent with this memorandum.